## JAMES KING ET AL. V. SUSAN BOCK.

### No. 3045.

1.  **Construction of Will by Wife to Husband.**—See will construed, considering every part of it as vesting in the husband of the testatrix an unrestricted power to use, consume, and dispose of the whole estate, without accountability to any one for any portion of it used or consumed, but vesting her undivided half of so much of it as might remain at the time of his death.

2.  **Same—Irrelevant Testimony.**—In a suit by the children of the testatrix and against a father's widow of a second marriage, brought to recover certain city lots which had been their homestead, it was irrelevant and immaterial to show what property and its value had come into the father's hands at the death of his first wife. It was claimed that the will gave the father but a life estate, and that he had spent more than his half, and that the entire lots sued for became the property of the children of the testatrix.

3.  **Rents—Tenant in Common.**—Plaintiffs recovered judgment for one half interest in city lots partly used as homestead and partly leased. The recovery of rents was properly limited to one half that had been received by the defendant.

4.  **Rents.**—The widow remaining in possession of property one half owned by her and one half by her husband's children by a former marriage, is a tenant in common with them and liable to account for rents received from the property.

5.  **Costs.**—Suit by several tenants in common against another who did not disclaim as to the interest of the plaintiffs but pleaded not guilty. *Held*, that all costs up to the judgment of recovery by plaintiffs of their interest are taxable against the defendant.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart.

This suit, being an action of trespass to try title, was brought by appellants in the District Court of Galveston County March 26, 1889, to recover lots Nos. 13 and 14, in block 619, and improvements thereon, in the city of Galveston, Texas, of the alleged rental value of $200 per month, claiming that on December 7, 1888, they as tenants in common with one Charles Schrimpf, setting out their respective interests, were lawfully seized and possessed of said premises, holding the same in fee simple; and that on said day appellee unlawfully entered thereupon and dispossessed and ejected them therefrom and unlawfully withheld from them the possession thereof, to their damage $2500.

One of appellants, Peter Bock, being incapacitated by disease from acting for himself, sued by his sister Mary J. Murray as his next friend, and afterward prosecuted his suit by his guardian *ad litem* F. D. Minor; and Charles Schrimpf being served with citation by order of the court, on appellee's motion, entered his appearance in compliance therewith.

The appellee pleaded not guilty; and also specially that on said December 7, 1888, and thereafter, she was lawfully seized and possessed ✺of said premises, holding to her own use one undivided half thereof in fee simple. That on or about August 18, 1872, she married Peter Bock, who died on December 7, 1888, and was at the time of his death and for many years prior thereto lawfully seized and possessed of said premises, holding the same in fee simple, and that by his last will he had devised to her one undivided half of said premises. That from the time he acquired said property, to-wit, about the year 1860, until his death he with his family had occupied the same as his homestead; and from the date of her marriage to him up to his death and ever since then she had continued to reside at said premises with the minor children born to her said husband during said marriage, occupying, using, and possessing the same as their homestead. That $3500 is the full value of one undivided half of said premises, and that there is no other estate of her said husband except personal property of the value of $210. She prayed to be quieted in her title to the undivided one-half of said premises, and in the event appellants should be adjudged to be entitled to any part thereof she prayed that the same be partitioned and one-half thereof be set apart and vested in her as her homestead.

It was agreed by appellants and appellee that the premises in controversy constituted a part of the common property and community estate of Peter Bock, deceased, and his wife Susanna Bock (sometimes called Susan Bock), deceased, at the time of her death, and was then held and owned by them as such in fee simple. And in deraigning their title, in compliance with appellee's demand, the appellants James King (formerly James Bock), Mary J. Murray, Peter Bock, Agnes Cross, and Julia Durr, as the only surviving children of said decedents Peter Bock and Susanna Bock, and their only surviving descendants excepting children of some of above named appellants, claimed said premises as devisees and legatees of Susanna Bock, deceased, under her last will, dated ——, 1870, and duly probated December 2, 1871, and also claimed as her heirs. And said appellee, deraigning her title, claimed said premises as devisee and legatee and sole executrix under the last will of Peter Bock, dated September 29, 1888, and duly probated, etc.; also claimed under a deed executed by said appellant James King, under his former name of James Bock, on November 16, 1881, conveying said premises to Peter Bock, etc., and as surviving wife of Peter Bock, deceased, also claimed said premises as her homestead.

The appellant James King, by supplemental petition, claimed that the deed executed by him to Peter Bock, deceased, of November 16, 1881, and referred to in appellee's deraignment of title, was intended only as a release of a lien then held by him on said premises, and had been accepted as such by said Peter Bock, deceased; and also that at the time of such execution he was a minor, under age of 21 years, and

that he disavowed and disclaimed such act. And said appellee excepted to the sufficiency of said supplemental petition, and alleged that said appellant after attaining full age had accepted valuable consideration for said deed and by his act had confirmed the same and was estopped from setting up claim to the property in controversy.

In addition to appellant's statement given above appellee added:

"Plaintiffs, children of Peter and Susanna Bock, suing in the ordinary form of trespass to try title, seek to recover from Susan Bock, the second wife, the property in controversy, which was Bock's homestead and was community property of his first marriage and was the only property in his possession at the time of his death, December 7, 1888. At the time of the death of his first wife, in 1871, Bock was generally considered in the community to be worth from $40,000 to $60,000, consisting chiefly of his homestead, which then contained three lots and a ship chandler's stock, in which business he was then engaged. All of said property except the two lots in controversy was consumed by loss in business and in the support of himself and family, including the children of both marriages. Plaintiffs' right under their mother's will to one-half of the property in controversy is not contested. But they seek to recoup upon the interest of their father, claiming that the will of their mother vested only a life estate in their father, that he had no right to use the corpus of their mother's estate, and that the remaining property being of less value than their mother's half at the time of her death they are in equity entitled to all the remaining property."

The jury found for plaintiffs one-half the lots sued for and half the rents defendant had collected, and that defendant owned the other half. Judgment accordingly and for plaintiffs for costs. Partition was ordered. The plaintiffs appealed.

*George Mason* and *F. D. Minor*, for appellants.—1. The legal effect of the will of Susanna Bock (the first wife of Peter Bock, deceased, and the mother of appellants), devising her share of the community estate of herself and her husband was to vest in him an estate for life, with remainder in fee to their children, with power to the life tenant to manage, control, sell, and convey the property subject to the condition contained in the fifth article, to-wit, that it shall be equally distributed at his death among the children. The important and controlling provisions of the will are in the second, third, fourth, and fifth articles. [See opinion.]

(1) The second article is explained and limited by the fifth, and must be taken and construed in connection with the latter, which prescribes the condition upon which the husband is authorized "to take, receive, and become possessed of" the devised estate, and "to manage, control, sell, and convey the same as his own estate;" that condition being "that the said estate" (to-wit, the estate devised by the testatrix)

"shall be equally distributed at his death among our children, subject only to the suggestion contained in article 4."

(2) There is nothing in the will indicating any intention of the testatrix to vest in the husband anything more than a life estate. The words generally used when the intention is to vest an estate in fee, such as give, grant, devise, etc., are not to be found in the instrument, while the words actually employed in declaring what the husband's rights shall be in respect to the devised property, to-wit, "to take, receive, and become possessed of," and "to manage, control, sell, and convey the same as his own estate," not only do not suggest but rather exclude the idea of any intention to vest in him an estate in fee.

(3) Such intention is not deducible from the words "as his own estate," used in the fifth article, for the context clearly shows that these words were meant to qualify only the words immediately preceding them, to-wit, "to manage, control, sell, and convey," and were not meant to qualify the preceding and more remote words, "to take and receive;" that they did not mean that he should "take and receive" the devised property "as his own estate," but are rather to be taken in the sense of words *ejusdem generis*, and as intended to designate the manner in which and the extent to which he should have power to manage, control, sell, and convey it; and the elipsis or eliptical expression, if completed, would be that he should take, receive, and become possessed of the devised estate, with full power and authority during his life to manage, control, sell, and convey the same as if it were his own estate, subject to the condition that at his death it should be distributed among the children.

(4) The power given the husband "to sell and convey" the devised property does not imply an intention to vest the fee in him: First, because if vested with the fee he would necessarily have the power to sell and convey, and the express grant of such power would be inoperative and superfluous; second, because the context shows that these words are to be taken and construed with those which they follow and with which they are closely connected and used, and the scope and meaning of which they are obviously designed to enlarge, to-wit, the words "to manage and control;" and so taken and construed their meaning manifestly is, in effect, that in managing and controlling the devised property for the purposes indicated in the third article, to-wit, the education and support of the children, the husband may to the extent necessary sell and convey it; and the fact that such acts would be essential in managing and controlling it, as well as the object of the testatrix in giving such power, is apparent when the character and condition of the property is considered (as may properly be done, 2 Jarmon on Wills, 525), as shown by the extrinsic evidence, from which it appears that the devised property consisted principally of merchandise held for sale in the usual course of trade, the management and control of which necessarily involved its

sale and conveyance; third, because an intention of vesting the fee in the husband is directly in conflict with the expressed conditions on which the power to sell and convey is given, to-wit, that the property shall be distributed at his death among the children.

(5) The third article of the will, in effect making the education and support of the children during the husband's lifetime a charge upon the property devised, is entirely consistent with and corroborative of the construction contended for by appellants.

(6) The fourth article shows the intention of the testatrix by assuming, as if a matter of course, that her children are to receive the property at the death of their father, and directing that such of them as shall have received advancements shall be charged therewith in the contemplated distribution among them.

(7) The several articles of the will referred to, considered either separately or together, show that the testatrix's intention was to give her husband only a life estate in the property, with such power of sale as should be necessary for the proper management and control of it during his life, so as to provide for the support and education of their children and to preserve it for distribution among them at his death; and said articles and the whole will exclude the inference of any intention of the testatrix to authorize her husband to consume the property, or most of it (as the evidence shows he did do), in providing for himself and a second wife and her children by a former marriage as well as her children by him; while the portions of the charge quoted in first and second assignments of error, especially when taken in connection with the portion quoted in the seventh assignment, to-wit, "neither could the titles to these two. lots be affected by any unprofitable management of the community estate of Peter Bock and his first wife, who by her will gave her husband the rights and powers aforesaid," were calculated to and probably did mislead the jury as stated in second assignment of error, and cause them to believe that the husband had the right to consume in the way the evidence showed that he did do during his second marriage nearly all his first wife's share of her and his community estate, to the exclusion of her children, and then by his will leave the residue of it to his second wife.

(8) So far as the intention of the testatrix was a question of fact to be determined by the jury, the court erred in withholding it from their consideration.

2. The evidence thus summarily excluded by the charge from the consideration of the jury ought not to have been so excluded.

(1) It had been admitted over appellee's objection after full argument before the court, and was evidence absolutely necessary to sustain appellants' case. It was not offered in confession or avoidance of anything pleaded by appellee, for it must necessarily have been presented to maintain appellants' right of action, even if there had been no other

plea than that of not guilty. Appellants' case was in effect that their mother by her will had left her share of the community estate of herself and their father to him for life, with remainder to them in fee; that said community estate at her death in 1871 consisted of real and personal property, including the two lots sued for, amounting in value to above $40,000; that their father had married appellee soon after their mother's death and had himself died in December, 1888, having in the meantime applied to his own use, disposed of, and consumed the whole of said community estate—their mother's share as well as his own—excepting only the two lots in controversy; and that they therefore were entitled to the whole of said two lots, it being all that remained of said community, and much less than their mother's share of it, which she had devised to them.

(2) Appellants' petition was in the usual form of one in trespass to try title and contained all the averments prescribed by statute, while their deraignment of title set out the claim or title on which they relied. Under them they were entitled to introduce said evidence, it being necessary to establish their right of action; nor could they be deprived of such privilege by the pleadings of their adversary. The rule excluding in the absence of proper specific allegations evidence offered by plaintiff in confession and avoidance of matter pleaded in defense was not applicable to this case, for the said evidence was offered, not in confession and avoidance of matter pleaded in defense, but to sustain the right and claim asserted by appellants; and so far as it affected the matter pleaded in defense it was not in confession and avoidance, but went directly to contradict, rebut, and disprove such matter, as appellants had a right to do; and if said evidence was excluded from the consideration of the jury because in confession and avoidance of matter pleaded in defense, without sufficient allegations in the petition, then said ruling was erroneous.

(3). The said evidence having been admitted when offered and its objects and purposes stated by appellants' counsel, over appellee's objection that it was inadmissible on the ground of being in confession and avoidance of matter pleaded in defense, and said objections having been overruled, the action of the court afterward in excluding by its charge to the jury said evidence from their consideration—no reason being assigned therefor—apparently must have been on the ground that it was irrelevant because appellants' father had the right under their mother's will to apply to his own use, consume, and dispose of, to their exclusion, the estate devised by her; and if the evidence was so excluded on that ground the court erred in so construing the will.

(4) The father's appropriating to his own use, consuming, and disposing of part of the community estate of himself and appellants' mother, was in legal effect making partition of said community estate between himself and appellants, taking to himself the part of such es-

tate so appropriated to his own use, consumed, and disposed of by him, and separating and setting apart therefrom the remainder of said estate (the same being less than said mother's share) and appropriating it to appellants, and by such partition he and those claiming under him as volunteers are bound.

(5) The father having appropriated to his own use, consumed, and disposed of more than half of the community estate of himself and appellants' mother, they are entitled to be indemnified as against him and those claiming under him as volunteers out of whatever remains of said community estate; and have such right if such indemnification takes all that remains of such estate.

(6) The action and conduct of the court in overruling appellee's objections to testimony offered by appellants, after said objections had been fully presented by appellee and the objects and purposes of the testimony fully stated by appellants, and in admitting said testimony in evidence for the purposes and objects as stated by appellants' counsel, and then after appellants' counsel had closed their case and made their argument to the jury under the belief necessarily produced by the rulings of the court that said evidence was before the jury for its consideration, in excluding said evidence from the consideration of the jury by charging them that it "had nothing to do with the case," was improper, unjust, and unfair, and prejudicial to appellants and calculated to operate and did operate as a surprise to their counsel, and prevented them from so managing and presenting their case as might and probably would have caused a different result.    Hughes v. Lane, 6 Texas, 294; Fowler v. Slocum, Id., 70; Hollingsworth v. Holshousen, 17 Texas, 43; Gilliam v. Null, 58 Texas, 298, 303, 304.

3.    In trespass to try title, as in an action for mesne profits at common law, the measure of damages for unlawfully withholding real estate from the owner is the rental value of the premises, and is not the amount of rents actually collected by the trespasser.    Rev. Stats., arts. 4809, 4814; Evetts et al. v. Tendick, 44 Texas, 571; Kill v. Ege, 82 Pa. St., 102; Campbell v. Brown, 2 Woods, 351; Bolling v. Lersner, 26 Gratt., 36; 1 Sedg. on Meas. of Dam., 7 ed., marginal p. 124; 3 Suth. on Dam., 346.

*Robert M. Franklin,* for appellee.—1.    The will of Susanna Bock does not in express terms confer a life estate on her husband Peter Bock, and there is not a single expression in said will indicating that the testatrix intended to confine the interest bequeathed to her husband to the income, profits, or use of said estate.

(1) The legal effect of said will at common law, without the aid of the statute, dispensing with technical words of inheritance, is to vest the absolute ownership of the personal property and the fee of the realty in her husband Peter Bock, and the direction in the fifth clause that said estate should upon his death be distributed among their chil-

dren is not a limitation over in fee, but is in the nature of a condition or gift over after devise in fee, and therefore void.

(2) The will contains no charge upon the estate, no directions as to income, profits, or use, no expressions raising a trust in the devisee, and in the absence of such charges, directions, or trusts, and of any express life estate, the addition of the words "to manage, control, sell, and convey as his own estate," following the devise of her entire estate, must be construed in their literal sense. The context does not clearly require the insertion of the words "as if it were" before the words "his own" (as suggested by counsel), and such addition would create a new intent not expressed by the testatrix.

(3) The directions in the third clause of the will in regard to the maintenance of the children, and in the fourth clause as to advancements, are precatory, and in the absence of any provisions fixing these expenditures or advancements as a charge upon her estate the intention to vest the fee in the husband is manifest.

(4) The greater part of the property devised consisted of personalty, viz., a ship chandler's stock of merchandise, etc., and the intent to give the fee of perishable property is presumed, unless the will contains express provisions showing a different intention.

(5) The whole will shows a manifest intention that the husband should take the fee, and the directions as to maintenance of the children, advancements, and disposition upon death of her husband show the intent of testatrix that after her death her husband should still have the management and disposal of the community estate as an entirety, and that at his death he should distribute the whole estate, whatever it might then consist of, among their children.

(6) If the court should hold that the fifth clause is a limitation over in fee, then the words "my said estate shall be equally distributed at his death," etc., apply or speak to the time of his death and mean the estate as it then existed, whether increased or diminished by the use and enjoyment of the same by the husband and children, as contemplated by the will. 3 Jar. on Wills, 31–33; 2 Jar. on Wills, 527, n. 17, 529, n. 19; 2 Red. on Wills, 328, 330, 394, pl. 22, 23; Schoul. on Wills, secs. 549, 559; Ramsdell v. Ramsdell, 27 Me., 288; Ide v. Ide, 5 Mass., 500; Gifford v. Choate, 100 Mass., 345; Campbell v. Beaumont, 91 N. Y., 464; Williams v. Leach, 28 Pa. St., 89; Ruby v. Barnett, 49 Am. Dec., 112 and note; 3 Jar. on Wills, 486; 3 Jar. on Wills, 23 and note; 3 Washb. on Real Prop., *348, 349, 694; 4 Kent, 540; Bell v. Scammon, 15 N. H., 390; Lloyd v. Jackson, 1 L. R. Q. B., 571; Jackson v. Bull, 10 John., 148; Spicer v. Spicer, 2 Croke Rep., 527; Schoul. on Wills, secs. 557, 558; 1 Washb. on Real Prop., 74, pl. 29; McMurry v. Stanley, 69 Texas, 227; Weir v. Stove Co., 7 N. W. Rep., 78.

2.   The evidence offered by plaintiffs for the purpose of showing that the community estate of Peter Bock and his first wife had largely dimin-

ished after the death of his wife, and that the children of the first marriage had a right to recoup upon their father's half of said property, was matter in confession and avoidance of defendant's title to said half interest, which was specially pleaded, and said evidence was not admissible in the absence of appropriate allegations in plaintiffs' pleadings. This character of proof did not tend to establish plaintiffs' claim that they were seized as of fee in the property in controversy, nor does such proof rebut defendant's allegation that Peter Bock, the owner in fee of one-half of said property, devised the same to defendant.

The court should have sustained defendant's objection to the admission of this evidence, and by its charge simply withdrew evidence that it should have excluded when objected to:

(1) Because of irrelevancy, as the will vested the fee in the husband.

(2) Because plaintiffs had not alleged any appropriation of their mother's interest by their father.

(3) Because claim for conversion of personal property or for an account can not be joined with or enforced in an action of ejectment, nor could such claim prevail over the defendant's homestead right in the property in controversy.

(4) Because the provisions of the will of his first wife, whether vesting the fee in her husband or not, relieved him of liability to account. Hobby's Land Law, sec. 153; Hollingsworth v. Holshousen, 17 Texas, 43; Rivers v. Foote, 11 Texas, 662; Paul v. Perez, 7 Texas, 338.

3. Where the evidence does not show hostile and exclusive occupancy by cotenant after demand for joint occupancy or enjoyment of the premises, the measure of damages in suit for the land or for mesne profits is the cotenant's pro rata share of the rents received. Akin v. Jefferson, 65 Texas, 137; Osborn v. Osborn, 62 Texas, 495; Neil v. Shackelford, 45 Texas, 119.

4. The court erred in rendering judgment against defendant for one-half the rent received by defendant for part of the premises, and in refusing defendant's requested charge to the effect that the said premises in controversy having been the homestead of defendant and her late husband, defendant could not be held liable to her cotenants for rent or use and occupancy thereof until a homestead, or an allowance in lieu of a homestead, was secured or offered to her out of her interest in said property. Presley's Heirs v. Robinson, 57 Texas, 459, 460; Putnam v. Young, 57 Texas, 461; Runnels v. Runnels, 27 Texas, 517.

HENRY, ASSOCIATE JUSTICE.—This was an action of trespass to try title, and to recover rents, brought by the appellants.

The plaintiffs alleged that they and one Charles Schrimpf as tenants in common owned the whole of the land sued for, which they described as lots 13 and 14, in block 619, in the city of Galveston.

The defendant Susan Bock pleaded not guilty, and specially that she owned an undivided one-half of the land in controversy, and "without admitting or denying plaintiffs' title in the remaining undivided moiety of said premises," she asked "that they be put to their proofs." The defendant further answering stated how she had acquired her title to an undivided one-half of the premises.

The answer of the defendant and the evidence shows that Peter Bock was twice married. The land in controversy belonged to the community estate of the said Peter and his first wife Susanna Bock (sometimes called Susan Bock). Appellants were children of that marriage. The first wife died in 1871, leaving a will which was duly probated. At the date of her death, in addition to the land now in controversy there belonged to the community estate other property of considerable value, consisting mainly of a stock of merchandise. At the date of the death of Peter Bock nothing remained of the community estate except the property in controversy.

In the year 1872 Peter Bock married the defendant, and on the 7th day of December, 1888, he died, leaving a last will, which was subsequently duly probated, by which he devised to the defendant his interest in the property in controversy.

Appellants contend, and with the view of sustaining their claim introduced evidence, that the will of the first wife of Peter Bock only gave to her husband a life estate in her share of their community property; that at the time of the death of the first wife the community estate was of the value of some $30,000 or $40,000; that at the time of the death of the husband all of said estate had disappeared except the property in controversy, which was of the value of about $5000 or $6000; and that the husband having used more than an equal half of the estate intrusted to him, the children of his first wife are entitled to hold all that remains.

Evidence was introduced tending to show that the diminution in the value of the community estate was caused by the unprofitable character of the business conducted by the husband subsequent to the death of his first wife, and by the cost of maintaining his family, including his family by his second marriage.

The appellee contends with regard to the will of the first wife that "the whole will show a manifest intention that the husband should take the fee, and the directions as to the maintenance of the children, advancements, and disposition upon death of her husband show the intent of testatrix that after her death her husband should still have the management and disposal of the community estate as an entirety, and that at his death he should distribute the whole estate, whatever it might then consist of, among their children."

The will reads as follows:

"2. It is my will and desire that my much beloved husband Peter Bock shall take, receive, and become possessed of, all and singular, my earthly possessions, including my separate and community property, being every estate in property known to the law.

"3. I desire that my said husband Peter Bock during his life shall support and educate in a liberal manner all our children while they are minors and our daughters so long as they shall remain unmarried, without any charge whatever against such minor children or unmarried daughters.

"4. I desire that all moneys, or property at an estimate in money to be made by my said husband, that may hereafter be given or that may have been heretofore given by either of us to any child after marriage or its majority shall be charged against such child, and such moneys or property so given shall be deducted from such child's inheritance or patrimony whenever the same shall be given to such child or its representatives.

"5. I desire that my said husband Peter shall take and receive all of my estate as aforesaid with full power and authority to manage and control, sell and convey the same as his own estate, conditioned nevertheless that the said estate shall be equally distributed at his death among our children, subject to the suggestions contained in article 4 herein.

"6. I desire that no action whatever shall be taken in the management of my estate in any court of the country, except in so far as is necessary for the probate of my will and the filing of an inventory and an appraisement thereunder in pursuance of statutory requirements now in force.

"7. I desire that no bond shall be required of my said husband Peter Bock in order to enable him to take and receive under this will.

"8. I desire that there be no executor of my will further than the action of my said husband may be considered such in probating this will.

"[L. S.]                    [Signed]        "SUSANNA BOCK."

We do not think that it was the intention of the testatrix to devise her estate as it existed at her death to her children, subject to only a life estate in her husband. On the contrary, considering every part of the instrument, we conclude that it was the intention of the testatrix to vest in her husband an unrestricted power to use, consume, and dispose of the whole estate, without accountability to any one for any portion of it used or consumed, but to vest in her children her undivided half of so much of it as might remain at the time of his death.

Entertaining this view of the will we are of opinion that there was no error in the charge of the court construing it, nor in the instruction that the evidence with regard to the character and extent of the community property of Peter Bock and his first wife, which had been ad-

mitted contrary to the objection of the defendant, should not be considered.

We find no error in any particular in the charge of the court.

Appellant assigns the following error: "The court erred in its charge to the effect that the defendant was to account for rents not on the basis of the rental value of the two lots, but only on the basis of the amount of rents received by her from the two lots since Peter Bock's death."

The rule here suggested depends no doubt upon the contention of appellants that they are the sole owners of the land in controversy, and entitled to recover it as such. Under such circumstances the rental value of the property and not the amounts actually received by the defendant would be the correct rule of recovery.

The property in controversy was occupied as a homestead partly, and partly rented by Peter Bock during his life and by the defendant subsequent to his death. The evidence does not show that such occupancy by his widow subsequent to his death was exclusive. Under this state of facts we think there was no error in holding the defendant accountable to plaintiffs and the defendant Schrimpf for one-half of the rents collected by her from tenants subsequent to the death of her husband, and for no more.

The appellee also assigned errors and complains of the judgment against her for one-half of the rents collected by her, on the ground that the property having been the homestead of herself and her late husband she could not be held liable for the use thereof until a homestead, or an allowance in lieu of one, was secured or offered to her out of her interest in the property.

Upon the death of her husband the right of the defendant to use the one-half interest of the children of the first wife as a homestead or otherwise at once terminated. Her relation to them was from that date a tenant in common, and as such she was accountable to them for their part of rents collected by her. It was as much her duty as it was the plaintiffs' to seek a partition of the property if she desired one.

The defendant not only pleaded not guilty and failed to disclaim title to one-half interest in the land, but as we have said required plaintiffs to establish their title thereto.

With the issue so joined we think the court properly held the defendant liable for all the costs up to and including the entry of the judgment appealed from.

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered March 6, 1891.