HICKMAN v. HARRELL et al.
No. 2777.

Court of Civil Appeals of Texas. Waco.
April 22, 1948.

Rehearing Denied May 20, 1948.

Grimes & Owen, of Taylor, for appellant.

McCampbell, Wood & Kirkham and Tarlton, Koch & Hale, all of Corpus Christi, Ray A. Pittman, Jr., and H. R. Wilson, both of Houston, Kleberg, Eckhardt, Mobley & Roberts and Kemp, Lewright, Dyer Wilson, & Sorrell, all of Corpus Christi, and Blades, Chiles, Moore & Kennerly and B. F. Whitworth, all of Houston, for appellees.

### LESTER, Chief Justice.

This suit was instituted by Ara M. Hickman against Vira A. Harrell et al. for the recovery of the title and possession of approximately 400 acres of land situated in Nueces county, Texas. She alleged that she was entitled to recover the land as a beneficiary of the joint will of T. M. and Maggie Harrell.

In 1936 T. M. and Maggie Harrell executed the following will:  ·

"The State of Texas ⎱ Know All Men by County of Nueces ⎰ These Presents:

That we, T. M. Harrell, and Maggie Harrell, husband and wife, both of said County, each of us being of sound and disposing mind and memory, and in each of us in fairly good health but ever mindful of the uncertainty of life now wish while we have the strength of mind and body to make this our last will and testament hereby revoking any and all wills made by us or either of us at any time heretofore and declare this to be our last will and testament.

First

It is our will and we direct that all just debts be paid.

Second

We give, bequeath and devise to the survivor of us, T. M. Harrell or Maggie Harrell, as the case may be, all our property, real, personal and mixed for the sole use and benefit of the survivor of us. In other words if T. M. Harrell survives Maggie Harrell, then and in that event all the property of the said Maggie Harrell shall vest in and become the property of T. M. Harrell, and if the said Maggie Harrell survives T. M. Harrell, then and in that event all the property of T. M. Harrell shall vest in and become the property of Maggie Harrell.

Third

The survivor as between us, the said T. M. Harrell and Maggie Harrell, shall be executor or executrix, as the case may be, of this will, and shall not be required to give bond as such, and no action shall be taken in the County Court in the administration of our estates other than to probate this will and return an inventory and appraisement thereof.

Fourth

After the death of both of us, and only then and not before, and after the payment of our just debts, the remainder of our property, of which the survivor of us shall die seized and possessed shall be disposed of as follows:

1st: We give and bequeath to Fred Roberts Memorial Hospital in Nueces County, Texas, the sum of Five Hundred Dollars.

2nd: We give and bequeath to the First Methodist Church in Corpus Christi, Texas, the sum of One Hundred Dollars.

3rd: We give and bequeath to the Luther Bible Class of said Church the sum of One Hundred Dollars.

4th: We give and bequeath to the Missionary Society of said Church the sum of One Hundred Dollars.

5th: We give and bequeath to the Methodist Church at Round Rock, Texas, the sum of One Hundred Dollars.

6th: We give and bequeath to the Methoodist Church at Leander, Texas, the sum of One Hundred Dollars.

7th: We give and bequeath to Mrs. Chloe E. Kilgore, Mrs. May Sullivan and Mrs. Awry A. McFarland (sister of T. M. Harrell—) each the sum of One Hundred Dollars.

8th: We give and bequeath—Mrs. Olive Egger one diamond ring (cluster) set in yellow gold band.

9th: We give and bequeath to Mrs. Ara M. Hickman one diamond ring set in platinum.

10th: To Mrs. C. Munro one gold breast pin and to Mrs. May Sullivan a white gold breast pin.

11th: We give and bequeath to W. E. Faubin and wife Ada Mae our dining room set of furniture.

12th: We give and bequeath our breakfast room set to Lucile Shows.

13th: We give and bequeath to Mrs. Ada Mae Faubion one glas—china closet set, and to H. G. Faubion one glass china closet set.

14th: We give and bequeath to Mrs. Ara M. Hickman all our silver ware and all the remainder of our china ware and furniture.

15th: We give and bequeath to Mrs. May Sullivan, sister of T. M. Harrell, the diamond ring at this time worn by said T. M. *Harrel—*.

Fifth

We give, bequeath and devise to the Methodist Orphanage Home at Waco, Texas, our home located at No. 1201 Second Street, in Corpus Christi, Texas.

Sixth

We give, bequeath and devise to Mrs. Ara M. Hickman all the remainder of our lands in Nueces County, Texas, at this time aggregating about 400 acres subject, however, to the right of H. G. Faubion to the use and possession, free of rent, of the one hundred acres of said land which he now lives on, as long as he cultivates and remains on said hundred acres.

Seventh

We give and bequeath in trust to the Bagdad Cemetery Association located near Leander in the County of Williamson, Texas, the sum of Two Thousand Dollars, which sum is to be loaned out at not least than five per cent interest per annum secured by first lien on land or invested in government, County, State or municipal bonds and the interest to be applied on the up keep of said cemetery.

Eighth

All the rest and residue of the estate of the survivor of us we give, bequeath and devise to the Southwestern University of Georgetown, Texas.

Ninth

We appoint J. A. Hickman executor of the estate and will of the survivor of us and no bond shall be required of him as such and we direct that no other action be had in the County Court other than to probate this will and return an inventory and appraisement of the estate of the survivor of us.

Witness Our Hand—this —— day of July, A. D. 1936.

T. M. Harrell
Maggie Harrell."

Mrs. Maggie Harrell died on or about the 27th day of May, 1939, and shortly thereafter her will was admitted to probate and the said T. M. Harrell qualified as independent executor of her estate and took charge of the same. It is alleged by the appellant that at the time the will was executed Mrs. Maggie Harrell owned the land in question here as her separate estate but at the time of her death she was the owner of one-half of said land as her separate property and her husband was the owner of the other half as his separate property. It was further alleged that at her death the Harrells had cash in the bank to the amount of more than $40,000. At the time the will was executed the testators had no living child, but appellant was the wife of their son at the time of his death.

After T. M. Harrell qualified as executor of his wife's estate he executed deeds in which he conveyed all of his land in various parts to the several defendants. Some of the deeds recited considerations such as: "$10.00 cash and love and affection" and "$10.00 cash and other valuable consideration." One deed executed by him to his wife recited a consideration of $10 paid and the love and affection which he held for her, and contained the following clause: "There is excepted and reserved from this grant unto the grantor the full possession, benefit, dominion, use and enjoyment of the above described premises, and all of the rents, issues, profits, oil run, royalties or bonuses therefrom, for and during the natural life of the said grantor, T. M. Harrell, individually and as independent executor of the estate of Maggie Harrell, deceased."

T. M. Harrell died on or about February 22, 1946, and on August 19, 1946, said will was admitted to probate as the last will of the said T. M. Harrell and his surviving

widow, Mrs. Vira A. Harrell, was appointed administratrix of his estate with said will annexed.

The appellees presented several exceptions to the pleadings of the appellant, based upon the theory that the will granted to the survivor the absolute power to dispose of the fee by deed conveyances during his lifetime in any manner and on such terms as he desired. Upon hearing said exceptions the court sustained them. Appellant announced that she did not desire to amend her pleadings and the court thereupon dismissed the case.

Appellant's contentions are: (1) that under the terms of said will T. M. Harrell received only a life estate without power to dispose of the fee; and (2) that if said will did give him power of disposition, such right was restricted to conveyances executed in good faith for his own use and benefit; and (3) that the said will was a joint and mutual will, executed by the testators in pursuant to an agreement under which the survivor took only a life estate without power of disposition of the fee, or, in the alternative, that if he had the power to dispose of the fee, that such power was limited to such conveyances that were executed in good faith for his own use and benefit and under no consideration did he have the right to dispose of any part of the land involved for the purpose of defeating the intention of the testators.

Appellant alleged that the several deeds of conveyance were executed by the said T. M. Harrell in bad faith, without consideration, and for the purpose of circumventing the provisions of said will. The disposition of this appeal depends upon a proper construction of the will itself or the will and the pleadings filed herein. The real intention of the testator at the time of the execution of the will is always the supreme question of importance in its interpretation. If the terms of the will are clear and unambiguous, the intention of the testator must be determined from the instrument itself, including all of its provisions. If it is ambiguous, then extraneous evidence may be admitted to show the surroundings of the testator at the time of its execution in order to determine in what sense the words contained in said will were used. McMurray et al. v. Stanley et al., 69 Tex. 227, 6 S.W. 412; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Gilliam v. Mahon, Tex.Com. App., 231 S.W. 712; Jones Unknown Heirs et al. v. Dorchester, Tex.Civ.App., 224 S.W. 596; Hearing et al. v. Shelton, 103 Tex. 10, 122 S.W. 13; Neely v. Brogdon et al., Tex.Civ.App., 214 S.W. 614; Neely v. Brogden, Tex.Com.App., 239 S.W 192; TexJur., Vol. 44, p. 684, Sec. 135.

The appellant first contends that the terms of said will are clear and unambiguous and that the same should be construed so as to limit the estate of the survivor to one for life without any power of disposition of the fee, or in the alternative, that such power of disposition was restricted to conveyances made in good faith and for the use and benefit of said survivor.

The appellees also contend that there is no ambiguity in the terms of said will, and that the same should be construed as giving the survivor an absolute fee estate in the property, or, in the alternative, that it should be so construed as vesting in the survivor a conditional fee with power of disposition of the fee during the lifetime of said survivor for any purpose for which he pleased.

We too are of the opinion that the will is clear and free from ambiguity and we will first consider it in respect to the character of estate the testators intended that the survivor should receive.

The first sentence of the second clause of said will, standing alone, would vest in the survivor a fee simple title to all of the property of the deceased, said sentence providing: "We give, bequeath and devise to the survivor of us, T. M. Harrell or Maggie Harrell as the case may be, all our property, real, personal and mixed, for the sole use and benefit of the survivor of us." There can be no doubt but what that language would vest in the survivor the absolute fee, but they were not content to stop with that provision alone, so they included the second sentence: "In other words if T. M. Harrell survives Maggie Harrell, then and in that event all the property of the said Maggie Harrell shall vest in and become the property of T. M. Har-

rell, and if the said Maggie Harrell survives T. M. Harrell, then and in that event all the property of T. M. Harrell shall vest in and become the property of Maggie Harrell", as if to say that if they had not made their intentions clear and specific in the first sentence, they would do so by adding thereto the second sentence. Article 1291, Vernon's Ann.Civ.Stats., and authorities cited. The question now is, did the fourth paragraph, which reads: "After the death of both of us, and only then and not before, and after the payment of our just debts, the remainder of our property, of which the survivor of us shall die seized and possessed shall be disposed of as follows", have the effect to reduce the absolute fee given in the second clause to a life estate in the survivor and without power to make any disposition of the fee? If not, did it curtail or reduce the power of the survivor to make disposition of the fee to the extent that such disposition should be exercised in good faith on the part of the survivor and for his own use and benefit, or did it convert the absolute fee previously given into a conditional fee, with the right and power of the survivor to make whatever disposition of the fee during his lifetime that he chose to except by testamentary disposition?

Wills of similar import have been before the courts for construction.

In the case of Cragin v. Frost National Bank, 164 S.W.2d 24, 26 (writ RWM), by the San Antonio Court of Civil Appeals, the second clause of that will reads: "I give, devise and bequeath to my wife, Mary Jewett Wilson, all my property of whatsoever description and wheresoever situated, with full power to use and dispose of the same and to make testamentary disposition thereof, in any manner that she may think proper, subject only to the proviso contained in Article Fourth of this instrument." Article 4 provided that if she died without making a will subsequent to his death, then the gift made to her should be limited to a life estate, with power of disposition; and provided that upon her failure to make such will that so much of the property bequeathed to her that remained in her hands at her death and not disposed of by will should be distributed

as provided in Article 3; and further provided that nothing contained in said instrument should affect or diminish the power of his wife to have, use or dispose of all or any part of his estate. The court, speaking through Associate Justice Murray, held that Article 4 did not reduce the grant to a life estate, but that it created a conditional fee, and cited many authorities.

In the case of Feegles v. Slaughter, Tex. Civ.App., 182 S.W. 10, clause No. 1 of the will read: "It is my will and desire, and I do hereby bequeath all my property, both real and personal, to my beloved and faithful wife, Mrs. L. V. Young." Clause No. 5 read: "I further desire and hereby will and direct that upon the death of my wife the property which she then owns shall be equally divided between her relatives and my relatives, it being intended that she shall have full power to control and dispose of the property during her life." The court held that Mrs. Young had the absolute right to dispose of the property during her lifetime and vest a title in fee to it, to the exclusion of his or her relatives.

In the case of Norton et al. v. Smith et al., Tex.Civ.App., 227 S.W. 542, in construing a will in which the testator, after giving his property, by language importing absolute fee simple title, to his wife, in a subsequent clause of said will directed her to will to the respective families of herself and testator whatever property she might have at the time of her death, the court held that the will granted her a fee with power to dispose of any or all of said property during her lifetime, and that the latter clause applied only to the property of the testator still possessed by the wife at her death and not to the proceeds of sale of such property made by her during her lifetime.

See also the following authorities: McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; Hanna v. Ladewig, 73 Tex. 37, 11 S.W. 133; Livingston v. Koenig, 20 Tex. Civ.App., 50 S.W. 463; Woods v. Starrett, Tex.Civ.App., 154 S.W.2d 303–305; King et al. v. Bock, 80 Tex. 156, 15 S.W. 804.

■ Looking to the terms of the will alone and construing it as a whole, in the

light of the long recognized rule for the construction of wills that the first taker must be given the greatest possible estate consistent with a fair interpretation of the same, it is our opinion that clause No. 4 did not reduce the absolute fee given in clause No. 2 to a life estate in the survivor, but it only served to restrict it to a conditional fee and granted to the survivor the power of disposition.

Appellant says that the will in question is a joint and mutual will in that it was executed in pursuance to an agreement between the testators and under the terms of said will the survivor took only a life estate in the property without power of disposition of the fee, or if he had power to dispose of the fee, that such power was limited to such disposition made in good faith and for the use and benefit of the survivor, and since the said T. M. Harrell caused the will to be admitted to probate and accepted the benefits thereof, he did not have the right or power to make disposition of the fee to said property in the manner in which he did, and cites: Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165; Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. 839 (err. ref.); Moore v. Moore, Tex.Civ.App., 198 S.W. 659 (err. ref.); Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395.

Appellant pleaded that at the time the will in question was executed the property involved in the suit was the separate property of Mrs. Harrell; that the appellant was the wife of the Harrell's deceased son; that they had no child and no other daughter-in-law; that the appellant occupied in the hearts and affections of said testators the position of an only child. That at the time the will was executed she was married to her present husband, J. A. Hickman, and the testators named him as independent executor without bond of the estate and will of the survivor. Appellant also pleaded that the several conveyances were executed without consideration and in bad faith on the part of the said T. M. Harrell and for the sole purpose of defeating the intention of the testators at the time the will was executed, and that all interested parties had notice of all the necessary facts. They also pleaded that at the time

the will was executed the testators were elderly persons and were frugal and thrifty and had been for many years, and at said time their income and reasonably anticipated income was sufficient to supply the needs and desires of both of them during the remainder of their lives; that from the time said testators executed said will until the death of said Maggie J. Harrell their income was more than sufficient to provide for the comfort, support and expenses and desires of both of said testators, and at her death they had on deposit in the Corpus Christie National Bank, subject to check, the sum of $41,799.07; that at her death they did not owe any debts; that from her death to the death of said T. M. Harrell such income was in excess of the amount necessary to provide for the comfort, support and expenses of himself and defendant Vira A. Harrell, whom he married after the death of said Maggie J. Harrell.

It has been held that proof may be made that a will is contractual as well as testamentary in character by the provisions of the will itself, or by competent witnesses who testify to the agreement and evidence as to declarations of the promisor. Relations or conduct of the parties, and other facts and circumstances that tend to prove that an agreement was made, are admissible. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165. The will in the instant case makes twenty-four specific dispositions of the property of the testators, including their land, money, furniture, jewelry and even disposing of the family Bible. The will itself indicates to our mind that in disposing of so much property and making so many bequests in the manner in which they did, the testators must have had a complete understanding and agreement between themselves as to just how their property should be devised, and this they evidently carried out in the execution of said will to the minutest detail.

In treating of joint and mutual wills, Corpus Juris, Vol. 69, page 1297, provides that "the term 'mutual will' has frequently been used by the courts, especially in the earlier cases, interchangeably with 'reciprocal will', and with the same meaning, and, occasionally, as meaning a joint will. At the present time, how-

ever, the term 'mutual', so far as it relates to wills, appears to be applied, and, properly, confined by the courts to wills which are executed in pursuance of a compact or agreement between two or more persons to dispose of their property, either to each other or to third persons, in a particular mode and manner."

We think it is beyond question that the will granted to the survivor a conditional fee with power of disposition, but the question here is, did it give him the right to exercise that power in bad faith and for the purpose of circumventing the provisions of said will, thereby defeating the intentions of the testators in order to defraud the appellant of her rights that she had acquired thereunder? We do not believe that such power was granted. It is conceded that the survivor did not have the right to make testamentary disposition of the property and he should not have the power to do, in a spirit of fraud, indirectly what he could not do directly. In the instrument that he executed to his wife, Vira A. Harrell, he attempted to convey this tract of land for a recited consideration of $10 in cash and for the love that he had for her, but he reserved everything pertaining to the land until he died, in that it provided: "There is excepted and reserved from this grant unto the grantor the full possession, benefit, dominion, use and enjoyment of the above described premises, and all of the rents, issues, profits, oil runs, royalties or bonuses therefrom, for and during the natural life of the said grantor, T. M. Harrell, individually and as independent executor of the estate of Maggie J. Harrell, deceased." In respect to said instrument appellant alleged that the same was not in fact a deed but in its practical effect the same as a will, and in effect testamentary in character, and that it was executed pursuant to a fraudulent scheme concocted by and between T. M. Harrell and his wife, Vira A. Harrell, for the purpose of evading, circumventing and avoiding the terms and provisions of the joint and mutual will of the testators in order to defeat appellant of her rights that she had acquired under

the same. One of the underlying principles pertaining to joint and mutual wills as applied to the facts of this case is that when two or more parties agree to make disposition of their property in a particular mode or manner, and based upon and pursuant to said agreement they execute their wills containing reciprocal provisions with remainder upon the death of the survivor to a third person, and upon the death of one of said parties the survivor accepts under said will and receives the fruits and benefits of the same, he will not be allowed to revoke the same or to make disposition of the property contrary to the provisions of said will.

Considering the will in its entirey and the allegations of appellant in respect to the circumstances surrounding the testators at the time the will was executed, we are of the opinion that it was their desire and intention that the survivor should enjoy the usual and necessary comforts comfortable to their circumstances and station in life so far as their property would permit, and to that end they intended that the survivor should have free management and control over said property, unfettered by technical rules of restraint in respect to its disposition, and if any of their property was left at the death of the survivor it should pass as provided in said will; and that in making disposition of such property the survivor should do so in good faith. We are certain that they did not intend that the survivor should act in bad faith in carrying out the terms of said will and dispose of it contrary to the intention as expressed therein and execute instruments for the willful and fraudulent purpose of defeating such intention. While the will does not expressly provide that the disposition shall be exercised in good faith upon the part of said survivor, we think that such intention can be clearly inferred from the instrument as a whole and that such provision will be implied. It has been held that the obligation to use good faith in carrying out what is written underlies all written agreements. Amer. Jur., Vol. 12, p. 767, sec. 239. It is also the law that a written instrument should em-

body the entire contract and the court should not read into the instrument additional provisions unless it is necessary in order to effectuate the intention of the parties as disclosed by the instrument as a whole, and that implied covenants must rest entirely upon the presumed intention of the parties as gathered from the words actually expressed in the written instrument itself, and will arise only when necessary to give effect to the actual intention of the parties as reflected by the instrument as construed in its entirety in the light of the circumstances under which it was executed and the purposes sought to be accomplished thereby. Danciger Oil & Refining Co. of Texas et al. v. Powell et al., 137 Tex. 484, 154 S.W.2d 632, 137 A.L.R. 408; 14 Amer.Jur., p. 490.

Applying the facts of this case to those rules, we have here two elderly people, a man and his wife, with a large amount of property, desiring to dispose of it by will and making many specific bequests to take effect upon the death of the survivor, in one of which they devised a great bulk of their estate to their daughter-in-law. The will evidenced the fact that they must have had a complete understanding as to the manner in which said property should go. They did not expressly provide that the survivor should exercise good faith in making disposition of the same, but considering the relationship of the parties and the solemn undertaking in which they were then engaged, having utmost confidence in each other, isn't it certain that they presumed and intended that the survivor should exercise good faith in carrying out the terms of said will, and that such intention was so clear that such provision would be superfluous and absolutely unnecessary?

Since the survivor did not have the right to dispose of the property herein involved in bad faith for the purpose of defeating the common intention of the testators and thereby depriving the appellant of her rights which she had acquired thereunder, it was error upon the part of the court to sustain exceptions to appellant's pleading in this respect. The judgment is therefore reversed and the cause remanded.