**RICHARDSON et al. v. McCLOSKEY et al.**
(No. 6622.)

(Court of Civil Appeals of Texas. Austin.
Feb. 20, 1924. Rehearing Denied
April 30, 1924.)

1. **Appeal and error ⚖️➔766—Objections to considering briefs because not conforming to new rules, overruled, on filing supplemental briefs.**

Objections to consideration of appellants' briefs because not conforming to new rules, overruled; they, by permission, filing supplemental briefs, eliminating, to a considerable extent, the defects.

2. **Appeal and error ⚖️➔870(5)—Order passing on pleas held not "final," so that construction therein of will was open on appeal from final judgment on the merits.**

Order passing on dilatory pleas not going to the merits *held* not "final," and, though not appealed from, construction therein of will was open for review on appeal from final judgment on the merits—(citing Words and Phrases, First Series, Final Decree or Judgment).

3. **Appeal and error ⚖️➔870(5) — On appeal from interlocutory order appointing receiver, appeal from other interlocutory orders not required.**

On appeal allowed by statute, from interlocutory order appointing a receiver, appeal from other interlocutory orders already made is not necessary, and, not having been taken, construction of a will in one of such orders, not relied on as ground of error in appointing the receiver, is open to review on appeal from the final judgment on the merits.

4. **Appeal and error ⚖️➔1097(8)—Determination on appeal from appointment of receiver conclusive on appeal from judgment on merits.**

Determination, on appeal from interlocutory order appointing receiver, of right to make the appointment, is conclusive on appeal from judgment on the merits, there having been no motion to vacate the appointment.

5. **Receivers ⚖️➔59—Motion to retax costs, objectionable collateral attack on judgment of appointment.**

Motion in the trial court, after interlocutory order appointing a receiver had been affirmed on appeal by judgment, adjudicating costs incident to the receivership up to and including such appeal, to retax such costs, is a collateral attack on the appointment, which is not permissible.

6. **Receivers ⚖️➔154(1)—Time for determining costs.**

The costs of receivership subsequent to judgment affirming interlocutory order appointing receiver, and adjudicating such costs up to and including the appeal, are not a subject for determination by the judgment on the subsequent trial on the merits, but are to be determined on the final hearing and discharge of the receiver.

7. **Receivers ⚖️➔36, 59—Proposition as to abandonment of receivership by amendment of pleading, collateral attack on judgment of appointment, and without merit.**

Proposition of defendant appellants that plaintiffs, by amending their pleadings after affirmance of the order appointing a receiver, and therein omitting to continue to pray for such appointment, but merely reciting the fact of the appointment and the affirmance of the order, abandoned the receivership, is not only a collateral attack on the judgment of appointment, not permissible, but also without merit as matter of law.

8. **Conversion ⚖️➔1—Doctrine of equitable conversion obtains in Texas.**

The general doctrine of equitable conversion obtains in Texas.

9. **Conversion ⚖️➔15(1)—Interpretation for intent as to equitable conversion as for other intent.**

In interpreting a will to ascertain whether an equitable conversion has been provided, the same primary rules are applied as in interpretation for any other intent of testator.

10. **Wills ⚖️➔470, 471—Primary rules for determining testator's intent.**

The primary rules for interpretation of a will for intent of testator are that his intention as expressed in the will shall be ascertained, that that intention must be reached from the will in its entirety, and that, if special words or clauses evidence a special intent, inconsistent with the general intent, the latter must prevail.

11. **Conversion ⚖️➔1—"Equitable conversion" defined.**

"Equitable conversion" is that change in the nature of property by which, for certain purposes, real estate is considered as personal, or personal estate as real and transmissible and descendible as such; the doctrine being founded on the maxim that equity regards and treats that as done which in fairness and good conscience ought to be done (citing Words and Phrases, First and Second Series, Equitable Conversion).

12. **Conversion ⚖️➔15(1)—Rules for determining, whether directed by will.**

The rules for determining whether an equitable conversion has been directed by testator are that conversion is a matter of his intention, to be determined from the will, that to work a conversion there must be a positive direction to sell, or there must appear an absolute necessity to sell, in order to execute the will, or there must be such a blending of real and personal estate by the will as to clearly show testator intended to create a fund out of both real and personal property, and bequeath it as money.

13. **Conversion ⚖️➔16(3)—Equitable conversion held not worked by will; "residue."**

Equitable conversion *held* not worked by will; power of sale being discretionary, and there being no absolute necessity for sale, and "residue," which was to be divided after death

⚖️➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of life tenant, including real estate as well as personalty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Residue.]

**14. Executors and administrators ☞31, 76— May not assert right to exercise powers under will where for their misconduct possession has been given to a receiver.**

Executors having so conducted themselves in the execution of their trust as to necessitate a court of equity, through a receiver, to take the estate from their possession and control, may not assert the right to exercise any power conferred on them by the will; but equity, having properly obtained jurisdiction over all interested parties and of the estate, is authorized to dispose of it as in fairness and good conscience the facts and circumstances demand, notwithstanding Rev. St. arts. 3358, 3374, as to execution of directions in will and power of sale thereby given executors.

**15. Courts ☞37(3)—Party asking court of competent jurisdiction to determine question may not assert that another court should have passed on it.**

Where party to suit in court of competent jurisdiction requests it to rule on a question involved, which another court, by statute, is also given authority to determine, he is thereafter precluded from asserting that it should have been passed on solely by the other court.

**16. Wills ☞827—Payment of entire community debt from husband's half interest held not directed by his will.**

Testator by use of the term "I desire that all my just debts be paid," etc., *held* not to intend to bind his half interest in the community estate to pay the entire community debts of himself and wife.

**17. Wills ☞487(3)—Testator's intention cannot be shown by parol evidence of his statement.**

Testimony that testator told witness that he wanted the property sold and the proceeds divided *held* to contravene, not only the rule against varying a written instrument by parol, but the rule that testator's intention must be determined from the language of the will.

**18. Wills ☞479—Construction for court, not executors.**

Beneficiaries under a will are not bound by its interpretation or construction by executors, but a court only may construe it so as to bind all parties.

**19. Husband and wife ☞273(4)—Tombstone at testator's grave by his wife held chargeable to her life interest and not to community estate.**

Expense of tombstone placed at testator's grave by his wife is not chargeable to the community estate, or testator's half interest therein, but to her life estate given by his will; she having contracted therefor, intending to bind her estate therefor.

**20. Appeal and error ☞1018—Findings and judgment supported by testimony not disturbed.**

Master's finding that testator's wife contracted expenses of tombstone for his grave, intending to bind her estate therefor, and judgment accordingly, being supported by the testimony, will not be disturbed on appeal.

**21. Life estates ☞19—Insurance premium held chargeable to income of estate during life tenancy.**

Insurance taken out by executors in their names during the life tenure, on property producing a large income, in the absence of evidence that it covered more than the probable insurable interest of the life tenant, *held* chargeable to the income during the life estate.

**22. Life estates ☞18—Life tenant chargeable for taxes.**

The life tenant and not the estate in remainder is chargeable for taxes accruing during the life estate, whether on productive or nonproductive property.

**23. Life estates ☞17—Life tenant chargeable for improvements during.**

The estate in remainder is not chargeable with expense of improvements, though permanent, placed on the property during the life tenancy by the life tenant or by the executors for her.

**24. Life estates ☞20—Remainder not chargeable for any expenses of management by executors during life tenancy, neither provided by will nor necessary.**

No part of the expenses of management of the estate by the executors, such as bookkeeping expenses, etc., during the life tenancy, is chargeable to the remainder; the will not providing for the executors remaining in possession during life tenancy, and it being inferentially found that there was no necessity therefor, a matter in issue, by refusal to allow such charge.

**25. Life estates ☞20—Expenses of management for life tenant.**

The expenses of care and management of a life estate are for the life tenant, not the remaindermen.

**26. Executors and administrators ☞501 — Pleading and proof insufficient for commissions.**

Executors sued for an accounting, having merely alleged that they were entitled to 5 per cent. commissions on moneys received and paid out, and submitted no amount or item to the court or master on which commissions were claimed, there was nothing on which to base a judgment therefor.

**27. Executors and administrators ☞495(1)— Executors having paid commissions to agents not entitled to commissions on disbursements and collections.**

Executors are not entitled to commissions on disbursements and collections for which they had already paid agents the 5 per cent.

**28. Executors and administrators ☞500—Executors unlawfully appropriating funds and refusing to account not entitled to commissions.**

Executors having unlawfully appropriated and used funds of the estate and refused to account therefor are not entitled to commissions allowed by law to executors for administration of an estate (Rev. St. art. 3621).

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

29. **Appeal and error** ⬦1024(2)—Judgment having sufficient support in evidence not disturbed.

Judgment rendered on evidence introduced before the court and the findings and report of the master and the evidence before him, having sufficient support in the evidence, will not be disturbed on appeal.

30. **Executors and administrators** ⬦104(4)— Liable for interest from time of refused demand to deliver to beneficiary at completion of trust term.

Executor refusing on demand to account and deliver the trust estate to the beneficiary at completion of the term of trust, and found to have appropriated to his own use funds belonging to the trust estate, is liable for interest on the amount found due from date of beneficiary's demand.

31. **Executors and administrators** ⬦473, 474 (6)—Costs properly allowed against executors individually.

Costs of suit against executors by beneficiaries for accounting and partition, the executors being found to have appropriated funds to their own use, and unsuccessfully claiming that the will worked an equitable conversion, and that therefore they had right to further administer by selling the property and dividing the proceeds, their defense being in their individual rather than their fiduciary capacity, *held* properly allowed against them individually (Rev. St. arts. 2035, 3627, 3629).

32. **Partition** ⬦114(1) — Rule as to costs stated.

Successful plaintiffs in partition are entitled to costs up to the final judgment, and costs of partition are to be paid pro rata by those taking in partition.

33. **Executors and administrators** ⬦111(8)— Executors unsuccessfully defending against beneficiaries held not entitled to attorney's fees as being "necessarily incurred in course of administration."

Executors unsuccessfully defending action of beneficiaries for accounting and partition, found to have mismanaged the trust estate and to have made appropriations to their own use, and making claims against the estate in favor of another estate of which one of them was the beneficiary, and claiming the will provided an equitable conversion, entitling them to remain in possession, *held* not entitled to the attorney's fee provided by Rev. St. art. 3623, when "necessarily incurred by them in the course of the administration."

Appeal from District Court, Tom Green County; C. E. Dubois, Judge.

Suit by Robert J. McCloskey and others against George Richardson and another. Judgment for plaintiffs, and defendants appeal. Affirmed on defendants' appeal; reversed and remanded, with instructions, on plaintiffs' cross-assignments.

See, also, 228 S. W. 323.

Wright & Harris, of San Angelo, and Snodgrass & Dibrell, of Coleman, for appellants.

S. E. Taylor and Hill & Hill, all of San Angelo, for appellees.

Substitute Opinion on Motions for Additional Findings of Fact and for Rehearing.

BLAIR, J. Appellants file a motion for additional findings of fact. This motion should be granted in part. To explain our findings of fact would necessarily lengthen the opinion, and we have concluded to withdraw the opinion filed herein February 20, 1924, and file this one in lieu thereof, in order to make these corrections.

Appellants, in all capacities sued, file motions for a rehearing; which are hereby overruled. Some of the propositions of law announced in our opinion of February 20, 1924, are also withdrawn, as we do not now deem them necessary to a decision in this case, in view of the motions filed.

[1] Appellees object to our considering appellants' briefs because not prepared in accordance with the new rules of briefing. They are prepared in the same manner as were the briefs in the case of Blakency v. Johnson County (Tex. Civ. App.) 253 S. W. 333, which were held to be violative of the new rules of briefing. The record in this case is very voluminous, containing 747 pages of typewriting, and more than 700 pages of briefs. By permission, appellants have filed various supplemental briefs correcting their former briefs, which, considered with their illuminating motions, have eliminated, to a considerable extent, any defects; and appellees' objections are therefore overruled.

### Statement and Findings of Fact.

On April 25, 1919, appellees, as residuary legatees and devisees of the estate of T. H. McCloskey, deceased, filed suit against appellants George Richardson and James H. Neill, as independent executors of the estate of the said T. H. McCloskey, and individually, also filed suit against James J. Neill as independent executor and residuary legatee and devisee under the will of Laura McCloskey, deceased, who was the wife of the said T. H. McCloskey, for an accounting, and to recover possession of their alleged interest in the estate of T. H. McCloskey, deceased, and for partition. The petition alleged the fact of a large community estate of T. H. and Laura McCloskey, their deaths, the probate of their wills, the appointment and qualification of appellants as independent executors of the estate of T. H. McCloskey, and of appellant, James T. Neill as independent executor, residuary legatee, and devisee of the will of Laura McCloskey, attached a copy of the will of T. H. McCloskey to the petition, and asked for a construction thereof and determination of their interests under the will, and for judgment against the executors for their right, title, and interest in the estate, and

against appellants for all sums found by the court to be due them under the will.

On May 13, 1919, appellant Richardson filed his original answer, consisting of a general demurrer and general denial. Appellant Neill was not served with citation in time to require him to answer to the term to which the citation was issued, and his answer, consisting of a general demurrer and general denial, was not filed until August 29, 1919. No accounting was filed by the executors, and on December 19, 1919, appellees commenced to take the oral depositions of appellants and their bookkeepers, and completed this task on January 9, 1920. These depositions disclosed an unsatisfactory state of affairs, and a loose and careless manner of keeping the accounts concerning the estate, also some kind of division of the properties by the executors between the two estates. On January 9, 1920, appellees filed their first amended original petition, alleging, in addition to the matters alleged in their original petition, mismanagement of the property by appellants; conversion of a large part of it to their own use; a refusal to account or file a report or accounting; that appellants wrongfully claimed that they had the right and power, and that it was their duty under the will to sell the real estate without the consent of appellees, and that they had so sold a part of it and converted the proceeds; that they had loaned to themselves or to business concerns over which they had control large sums of money on open account or unsecured paper; that they were delaying an accounting of the condition of the trust estate in their hands, delaying a settlement and distribution thereof, and were appropriating and using properties, moneys, and incomes to their own use; that said Neill, who was the independent executor and the residuary legatee and devisee under the will of Laura McCloskey, had, with the consent of his coexecutor of the estate of T. H. McCloskey, taken possession of a large portion of the estate and was asserting title adverse to the interest of appellees, and refused to recognize their interest in the real estate and the rents therefrom. The petition further alleged the necessity of the appointment of a receiver to take charge of the properties pending the suit.

To this first amended petition, appellants filed their joint first amended answer, on the 12th day of February, 1920, urging misjoinder of parties and causes of action; excepted to so much of the petition as sought to deprive them of the right to sell the property under the will, and asked for a construction of the will; setting up the directions relied upon by them for their act in selling the property and converting it all into cash and dividing said cash as directed by the will to the residuary legatees and devisees; further asking the court to construe and adjudge whether an account of $11,260.30, alleged to have been paid out of the T. H. McCloskey estate to Laura McCloskey during her life, was chargeable only against the community interest of T. H. McCloskey in said estate; whether the debts owing at the date of the death of T. H. McCloskey were under the will payable out of his interest in the community only; whether the burial expenses were payable solely against his interest in the community. They also filed a report and accounting.

On January 14, 1920, the court entered an order restraining the appellants from selling and disposing of any of the property belonging to the estates, pending a postponement of a hearing on the application to appoint a receiver. This was an agreed order.

On February 18, 1920, appellant Neill, as executor of the estate of Laura McCloskey, and individually, filed an answer setting up misjoinder of parties and causes of action, and a general denial. On March 6, 1920, appellees filed a second amended supplemental petition, consisting principally of several exceptions to appellants' various answers and to their accounting.

On May 6, 1920, appellees filed their second amended original petition which contained a more complete statement of their cause than their first amended original petition, filed on January 9, 1920, and was in replication to the first amended answer and accounting filed by the executors February 12, 1920.

The cause proceeded to trial on the above pleadings, on the 12th day of May, 1920, and thereupon the court heard first the general and special demurrers contained in plaintiffs' first amended supplemental petition to defendants' first amended answer, and in doing so found it necessary and entered its order on that date construing the will. This order, omitting the formal parts, is as follows:

"This cause coming on this day for trial, plaintiffs and defendants appeared, and thereupon came on to be heard the general and special demurrers contained in plaintiffs' amended first supplemental petition to the defendants' first amended answer, and the court having heard said demurrers, and the argument of counsel thereon, is of the opinion and finds that it is necessary for the court to construe the will of T. H. McCloskey, dated October 16, 1910, and the codicil thereto, dated the 9th day of December, 1914, as attached to plaintiffs' second amended original petition and to the defendants' first amended original answer, and the court having considered said will is of the opinion:

"First. That all of the debts owing at the date of the death of said T. H. McCloskey are payable out of the community estate of said T. H. McCloskey and his surviving wife, Laura McCloskey.

"Second. That upon the death of said T. H. McCloskey, all of his interest in the community estate of himself and his surviving wife, Laura McCloskey, vested in the residuary legatees named in said will, subject to the payment of the debts against said community estate and the life estate of his wife in his interest therein, and the fruits and revenues during the

term of her life, and that upon her death the executors were required, out of the personal estate belonging to the said T. H. McCloskey, to pay the pecuniary legacies charged against his estate.

"Third. That upon the death of the said Laura McCloskey, and the payment of said pecuniary legacies and the inheritance taxes, the residuary legatees were entitled to the possession and use of the residuum of said estate.

"Fourth. That the executors were without power to sell the real estate belonging to the estate of T. H. McCloskey for the purpose of distribution to the residuary devisees.

"Fifth. That the taxes, insurance, repairs, and management of said estate during the existence of the life estate of Laura McCloskey therein were payable out of the incomes from said estate.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiffs' said demurrers (d), (e), (f), (g), (h), (i), (j), and (k) of general demurrers under subdivision 1, and special demurrer (e) of subdivision 2 of said demurrers be, and the same are hereby, in all things sustained, to which ruling of the court the defendants then and there in open court excepted.

"It is further ordered that general demurrers (a), (b), and (c) under subdivision 1 of said demurrers, and special demurrer (d) be, and the same are hereby, in all things overruled, to which ruling of the court, the plaintiffs in open court excepted.

"It is not intended by the court upon this order on these exceptions to strike out any items set out in the answer of defendants, but the court reserves the right upon hearing to pass upon the statement of the account when each item is presented."

This order was immediately followed by an order of the court on the same day overruling appellants' general and special exceptions, which involved practically the same matters as contained in the special exceptions of appellees sustained by the court in the above order, and to which action of the court appellants duly excepted.

On the following day, May 13, 1920, after a hearing upon the pleadings and evidence, the court found that a necessity existed for the appointment of a receiver of all the properties belonging to the community estates of T. H. and Laura McCloskey, deceased, pending this suit, and appointed R. J. Adkinson receiver thereof. This order of May 13th also enjoined George Richardson and Neill as executors of these estates, and individually, from in any way intermeddling with the properties in the hands of the receiver, or from intermeddling with the receiver in the possession and management of any of the properties, and from disposing of any of the properties. Appellants duly and severally excepted to the action of the court appointing this receiver, and gave notice of appeal, and did perfect an appeal under a supersedeas bond. This court affirmed the judgment of the trial court appointing a receiver, on November 24, 1920, reported in 228 S. W.

323, and application for writ of error was dismissed by the Supreme Court, June 15, 1921.

On May 17, 1920, the court entered a further order approving the bond of the receiver. Also, on May 17, 1920, the court entered a further order appointing C. T. Dalton master in chancery, to state the account, upon 38 specific questions directed either by the court or by request of counsel for both appellants and appellees.

On July 1, 1921, the trial court, after receiving the mandate issued from this court June 28, 1921, affirming the appointment of R. J. Adkinson as receiver, entered its order continuing the receivership and directing the receiver to take charge of all the properties belonging to the estates of T. H. and Laura McCloskey, deceased. Also on said date entered its order directing the master in chancery to proceed to state the account.

The receiver took charge July 13, 1921, and the master set the hearing on the account for July 19, 1921, which continued for some three months. The master made his findings and report, showing the condition of the estates down to July 19, 1921, the date when the hearing before him was begun, and filed his report on December 12, 1921. Both appellants and appellees filed exceptions to the master's report. On March 6, 1922, appellees filed their third amended petition and their amended second supplemental petition. These pleadings brought forward the same matters alleged in the original pleadings theretofore filed by appellees, adding specific descriptions of the properties claimed by appellees, and addressed certain exceptions to the master's report. On July 19, 1921, the date that the hearing was begun before the master, appellants filed their second amended answer. On March 7, 1922, appellee Neill, as executor of the estate of Laura McCloskey, and individually, filed his second amended answer. Appellants also filed written exceptions to the statement of the account by the master, March 7, 1922. The issues raised by these pleadings and the exceptions to the master's report were submitted to the court, the case being withdrawn from the jury by the parties; and after hearing the pleadings, the report and findings of the master, the exceptions to the master's report, and the evidence adduced on the hearing, the court rendered judgment March 10, 1922, for appellees, in substance, as follows:

(1) That T. H. McCloskey died December 26, 1914, leaving a will, duly probated in Tom Green county, and that appellants qualified as independent executors thereunder without bond April 9, 1915.

(2) That Laura McCloskey died October 28, 1917, leaving a will duly probated in said county, and that appellant James J. Neill qualified thereunder as independent executor without bond January 11, 1918.

(3) That T. H. McCloskey and Laura McCloskey were husband and wife, and acquired as their community property the corpus of all the real and personal properties mentioned and described in the pleadings and the master's report (other than those articles settled by the aforesaid agreement), each owning at the death of T. H. McCloskey an equal one-half interest therein.

(4) That appellees were the sisters and brothers of T. H. McCloskey, deceased, and the residuary legatees and devisees under his will, and entitled to receive the residuum of his estate.

(5) That appellant Neill was the residuary legatee and devisee under the will of Laura McCloskey, deceased, and entitled to the residuum of her estate.

(6) That all debts against the said community estate were paid before the death of Laura McCloskey.

(7) That all the special money legacies and charges under the will of T. H. McCloskey, deceased, were paid and delivered before May 1, 1918, and that the appellees were entitled to receive on and before said date the one-half interest of the estate of T. H. McCloskey, deceased, in the residuum of said community property, and the net rents and incomes therefrom accruing after the death of said Laura McCloskey.

(8) That appellees made demand on appellants on and before said date (May 1, 1918) for an accounting and settlement of said estate, and for partition and the possession of their interest therein, with the net rents and incomes therefrom accruing subsequent to the death of said Laura McCloskey.

(9) That appellants refused to deliver the possession thereof, and denied the appellees' right to a partition and possession thereof.

(10) That appellants had been in the possession and control of all of the community estate of T. H. and Laura McCloskey, deceased, since May 1, 1918, and had collected all of the rents and incomes of said community properties, and had refused to account for and pay to appellees any part thereof.

(11) That appellees' interest in said estate was not chargeable with any part of the sum paid by appellants to R. L. Armstrong after May 1, 1918.

(12) That appellees were entitled to receive from appellants the interest of appellees as residuary legatees aforesaid on May 1, 1918.

The court further found from the evidence and the report and findings of the master:

(1) That out of the corpus of said community assets converted into cash prior to May 1, 1918, and the proceeds of the sale of the real estate and the net rents and incomes from the real and personal properties of said community estate since November 1, 1917, appellants had appropriated and used the sum of $12,087.87 in excess of the one-half interest of the Laura McCloskey estate therein.

(2) That appellants were liable to appellees for interest on the moneys accruing to them and withheld by them since May 1, 1918, the further sum of $1,960.14.

The total judgment of appellees was the sum of $14,048.01, with interest from date at 6 per cent. per annum. The manner of enforcing the judgment and partition of the estates, and the other matters disposed of by this judgment, are as follows:

"That said properties, real and personal, above described, are jointly owned by the plaintiffs as residuary legatees and devisees under the last will of T. H. McCloskey, deceased, and James J. Neill, as independent executor and residuary legatee and devisee under the will of Laura McCloskey, deceased; that plaintiffs, Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick are the joint owners of the undivided one-half interest therein, and the said defendant, James J. Neill, as executor and legatee and devisee aforesaid, owns the other undivided one-half interest therein; that said properties are capable of partition and division in kind; and that the plaintiffs are entitled to a partition and division thereof. It is therefore ordered, adjudged and decreed by the court that said above-described personal properties, lands, and premises, be, and the same are hereby, ordered and directed, partitioned and distributed equally, one-half thereof jointly to the plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick, as the residuary legatees and devisees under the will of T. H. McCloskey, deceased, and one-half thereof to the defendant, James J. Neill, as independent executor and residuary legatee under the will of Laura McCloskey, deceased.'

"It also appearing to the court that Louis Farr, H. L. Fannin, and E. I. Jackson are residents of Tom Green county, Tex., and are competent and disinterested persons, it is ordered that they be and are hereby appointed commissioners, a majority of whom may act, to make a fair, equal, just, and impartial partition and division of said personal property and land and premises above described, between plaintiffs and defendants in accordance with this decree and the law, in the manner following:

"If the defendants, on or before the date of the issuance of writ of partition herein, shall pay to the clerk of this court for the plaintiffs the sum of $14,048.01, with interest from this date at 6 per cent. per annum, which payment, if made, shall be noted by the clerk on said writ, the commissioners shall divide said real estate and personal properties into two equal shares and shall allot in the manner provided by law one of said shares to the plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey and Maggie Glick, and one of said shares to the defendant James J. Neill, independent executor and residuary legatee and devisee of Laura McCloskey, deceased.

"If said sum of $14,048.01 is not paid to the clerk for the plaintiffs as aforesaid, then the

said commissioners shall make said partition as follows:

"(1) They shall ascertain and determine the value of said lands and premises.

"(2) They shall ascertain and determine the value of said personal properties and assets.

(3) They shall then divide said real estate and personal properties into two shares, allotting and setting apart to plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick one part thereof equal in value to one-half of the value of the whole of said properties plus $14,-048.01, and shall allot and set apart to James J. Neill, independent executor and residuary legatee and devisee of the estate of Laura McCloskey, deceased, one part thereof equal in value to one-half of the whole of said properties and assets less $14,048.01.

"When said partition has been completed, the commissioners shall make report in writing under oath, to the May term, 1922, of this court, describing the real estate and personal properties divided, giving the several tracts, parcels, and parts thereof into which the same is divided, describing particularly each of said tracts, parcels, and parts, and the estimated value and allotment of each share, accompanied by such maps and other descriptions as may be necessary to make the same intelligible.

"It is further ordered and adjudged by the court that the plaintiffs recover of the defendants all costs in this behalf incurred, for which they may have their execution.

"It is further ordered, adjudged, and decreed that the sum of $5,000 be allowed the defendants George Richardson and James J. Neill, executors of the estate of T. H. McCloskey, deceased, as attorneys' fees in this cause, to be paid out of the joint estates owned by plaintiffs and defendants, upon final adjudication and settlement of all matters herein and at the conclusion of this suit.

"It appearing to the court that the said properties and assets are in the possession of the receiver heretofore appointed by this court, and that he has in his hands as shown by his report on file, the sum of $4,545.33 it is ordered that said sum shall be held by him, with all rents and incomes hereafter coming into his possession as receiver, and shall not be taken into consideration in the partition aforesaid by the commissioners, but shall remain to be disposed of in the final judgment to be rendered herein on termination of said receivership."

Appellants excepted to the whole judgment as rendered. Appellees excepted to that portion of the judgment allowing attorney's fees to appellants' attorneys for defending this suit. Appellants filed a motion for a new trial, which was overruled, and exception taken and notice of appeal given. Appellants also filed a motion to retax the costs, which motion was overruled and exception taken thereto. The appeal is perfected upon a supersedeas bond.

The findings of fact recited in the trial court's judgment for appellees, of date March 10, 1922, hereinbefore set out, sufficiently support it, and are sustained by the evidence, and we adopt these findings as our own. A general history of the properties involved and the relationship of the parties to this suit thereto is as follows:

T. H. and Laura McCloskey were husband and wife, and accumulated a large community estate, consisting of real and personal property of the probable value of $125,-000, practically all of which was situated in Tom Green county, Tex., where they lived until their death, on December 26, 1914, and October 28, 1917, respectively. T. H. McCloskey during his lifetime was engaged in the saloon business, operating for many years the Arc Light Saloon. During his lifetime he was a close and intimate friend to both the appellants. A short time prior to his death, he went to another state, seeking to regain his health, where he later died. After his death Richardson and Neill took out a temporary administration on his estate, and Richardson was appointed his temporary administrator, with Neill as his attorney of record. This temporary administration was continued until the probate of his will and the qualification of appellants as independent executors appointed by the will. Through this temporary administration the Arc Light Saloon, the only going business concern of T. H. McCloskey, was sold. All the debts owing by the community estate, including the funeral expenses, were paid by the temporary administrator, except a few items of about $170, which consisted principally of taxes. After appellants qualified as independent executors under appointment of the codicil to the will of T. H. McCloskey, Richardson as temporary administrator delivered all the community property to himself and coexecutor Neill, since which time they have been in possession and control of the entire community estate of T. H. and Laura McCloskey, never permitting Laura McCloskey during her life term of the estate to have anything to do with its management or control, although no reason is shown why she should not have assumed control after the probate of the will of T. H. McCloskey, as the few debts then owing were shortly thereafter paid by the executors.

Appellants' management of the community estate during the life tenure of Laura McCloskey consisted of renting the real properties, loaning the money, and collecting the rents and interest. They also collected some open accounts due the saloon and some notes due the community estate. They employed a bookkeeper, who was in the employ of Richardson in his private business, and paid him a monthly salary thereafter. The matter of paying claims and debts, etc., against the estate, whether against the estate of Laura McCloskey personally, was practically left by the executors to the bookkeeper Armstrong, whom they had employed. The collection of rents was left practically to brokers who had been in charge of such matters before the death of McCloskey. These brokers also paid some of the insurance premi-

ums, deducting them and their commissions from the rents collected, delivering the balance to the executors. The only material matters attended to personally by the executors during the life estate were to collect notes due the community, sell some personal property and make loans of about $25,000 of the money belonging to the community estate, of which loans some $18,000 or $20,000 was loaned to themselves, upon either their personal notes or open accounts, or to business concerns in which they were interested, on their unsecured notes, or to personal friends of the executors, on their unsecured notes. The books kept were unsatisfactory, from which it was almost impossible to ascertain just what collections should have gone to the life estate and what to the respective one-half community estates of T. H. and Laura McCloskey. It was also practically impossible to ascertain just what property, debits, and credits did go to these various accounts. The appellants, having left the matters practically to their bookkeeper, were unable to throw much light on the situation, although they did finally succeed, long after this suit was filed, in making a fairly intelligible account of the transactions up until the death of Laura McCloskey. After the death of Laura McCloskey appellant Neill, who was appointed sole legatee and devisee of her estate, instituted a temporary administration proceeding on her estate, for what purpose it is not clear, except that it may have been done as an aid in an attempted division of the personal properties belonging to the community estate between the interests of the estates of T. H. and Laura McCloskey in the community. This division was made a few days after the death of Laura McCloskey, by appellants Richardson and Neill, acting as executors of the estate of T. H. McCloskey, and by Neill acting as executor and legatee and devisee of the estate of Laura McCloskey. They called to their assistance in this division Armstrong, the bookkeeper, Cunningham, who had assisted appellants some in collections, and a bank clerk. Armstrong's books are wholly insufficient to ascertain anything that was done in this division. They show over $19,000 worth of property was turned over to Neill for the Laura McCloskey estate; but no entry was made to show what was turned over to the T. H. McCloskey estate. Some entries or memoranda were made, stating some property that was turned over to T. H. McCloskey's estate; but Armstrong said it was incorrect. Appellants Neill and Richardson, as executors of the estate of T. H. McCloskey, and individually; and Neill as executor of the estate of Laura McCloskey, made a joint defense in this case. They refused to follow the history of the property turned over to Neill for the Laura McCloskey estate. Both Armstrong and Richardson recognized the insufficiency of their books as to this division, for Armstrong testified, that:

"I knew the basis upon which the division was made then, but do not know now; it has been some time ago, and I have lost the data. I do not remember whether it was the correct data that was carried into the books. I am not able at this time to give you any information about how the division was made. I do not think I can give you accurate information from any other source. I do not know of any way by which the plaintiffs in this case can ascertain how the division was finally consummated."

Richardson testified:

"After Mrs. McCloskey's death, we made a kind of division of the Laura McCloskey property and assets and the T. H. McCloskey property and assets with the executor or devisee of Laura McCloskey, but don't remember what it was. I suppose that division was in writing. I don't remember whether it was evidenced by written transfer or assignment. Since Laura McCloskey's death, to a certain extent, we have been looking after the property of the T. H. McCloskey estate—I mean Mr. Neill and I—very little extent. Mr. Cunningham has had the collection of the rents of the T. H. McCloskey estate. He was employed by Mr. Neill and myself as executors to look after the T. H. McCloskey property. Yes; Mr. Neill was claiming to be a devisee and claiming to have an interest in the property. * * *

"Q. Mr. Richardson, you state you made a division with the Laura McCloskey estate and gave that estate the $6,000 note of the Henderson Buggy & Implement Company; what property did you take for the Tom McCloskey estate? A. We didn't take any. That note went in as a part of the division. The Tom McCloskey estate did not get anything out of that. No; there was not any property set apart to the Tom McCloskey estate equal to that note for $6,000; that was coming to the Laura McCloskey estate out of the division. One estate amounted to so much and the other to so much, and that covered it.

"Q. If you set apart and turned over to the Laura McCloskey estate the $6,000 note, what did you set apart or retain for the T. H. McCloskey estate equal to this $6,000 note? A. Whatever was coming to the estate. I don't remember what particular property it was. I don't know whether there is anything on the books that will show it or not. The books do not show in a specific sense a partition of the property of Tom McCloskey and Laura McCloskey estate."

Richardson further testified to the shortcomings of his books; when asked if he would furnish an extra copy of a statement from them, he replied:

"As to whether we are making it out, just one, or in duplicate, we will be doing damned well if we get one."

The testimony shows that after some returns of property by Neill to the T. H. McCloskey estate after this division, that he

still received $11,600.24 worth of property more than was set aside to the T. H. McCloskey estate. Appellees demanded, on and before May 1, 1918, an accounting and settlement, about which Neill testified as follows:

"I told them all right, we will have to settle some way, and that I would insist on every dollar that was coming to the Laura McCloskey estate."

No settlement was had; hence this suit.

### Opinion.

[2] On the threshold of this case we are met with appellees' plea of res adjudicata on all questions presented by appellants, save such propositions as are predicated upon their objections to the findings and report of the master in chancery—first, because it is contended by appellees that the judgment of the court of May 12, 1920, hereinbefore set out, was final and conclusive on the various constructions of the will, and on the items of account which appellants insisted should be charged against the estate of T. H. McCloskey, on which no assignments of error were made, nor was there any appeal taken by appellants, and the time had expired from which such an appeal could be taken; and, second, because the May 12, 1920, judgment or order was made preliminary to and as a necessary basis to the adjudication of the rights and equities of the parties, the right to appoint a receiver and master, and for an accounting and partition, and, appellants not having assigned these rulings as error, nor presented them for review on their former appeal from the order appointing a receiver, that said judgment became final and conclusive on these matters, and cannot now be reviewed on this appeal from the judgment stating the account and awarding and directing a partition; and, third, because the errors asserted by appellants because of the appointment of a receiver had been finally and conclusively determined against appellants on their former appeal from the interlocutory order appointing a receiver.

We do not sustain the first two propositions above asserted by appellees, but do sustain their plea of res adjudicata as to the appointment of a receiver.

The order or judgment of May 12, 1920, shows on its face to be the action of the trial court upon special exceptions or dilatory pleas submitted by appellees in their first amended supplemental petition, which pleas did not go to the merits of the case, but adjudicated or announced rules or principles by which the trial court would thereafter be guided in arriving at a final adjudication of the matters complained of by appellees in their petition; that is to say, in passing upon appellees' rights for an accounting and for possession of the property sued for, and for a final partition thereof, the court construed the will not to provide an equitable conversion of the properties of the testator before final distribution thereof to appellees as devisees and legatees under the will. The order or judgment further shows on its face that the court was merely passing on the dilatory pleas before the main issues on the merits were tried as required by rule 24 of the district and county courts, for the order concluded with the recitation that for the reasons and grounds stated the special exceptions and demurrers of appellees were partly sustained and partly overruled.

Conceding that this order or judgment finally disposed of the question of the construction of the will, since the court nowhere in its subsequent orders or decrees again adjudicated the question; yet it was not such a final judgment as would require appellants to appeal from it or lose their right to have the action of the court thereon reviewed by this court on an appeal from final judgment of the whole case as made by the pleadings. This order construing the will was at most declarative only of appellees' right to ultimately recover such property as might later be determined from an accounting by the master and a hearing before the court to belong to them, and to a partition of those properties when the court ascertained by a further hearing and proceeding the nature and extent of the properties that should be so partitioned.

That portion of the judgment of May 12, 1920, concerning the items of expenses charged by appellants to the T. H. McCloskey estate, shows that the court merely passed upon the matters as dilatory pleas, and in order that it might dispose of such pleas at that time; for the order itself specifically reserves the right in the court to pass upon these particular matters at a future hearing thereon. The following recitation in the order indicates this conclusion:

"It is not intended by the court upon this order on these exceptions to strike out any items set out in the answer of defendants, but the court reserves the right upon hearing to pass upon the statement of the account when each item is presented."

The question presented comes clearly within the rule announced by the Supreme Court, in the case of Leyhe v. McNamara (Tex. Com. App.) 243 S. W. 1076, in which the court quoted with approval the following rules for determining when a judgment was final:

"'Where the further action of the court in the cause is necessary to give completely the relief contemplated by the court, there the decree upon which the question arises is to be regarded, not as final, but interlocutory.' Cocke's Adm'r v. Gilpin, 1 Rob. (Va.) 20.

"The words 'action of the court in the cause' are used 'to distinguish it from that action of the court which is common to both final and interlocutory decrees, to wit, those measures which are necessary for the execution of a decree that has been pronounced, and which are properly to be regarded as adopted, not in, but beyond, the cause, and as founded on the

decree itself or mandate of the court, without respect to the relief to which the party was previously entitled upon the merits of his case.' 1 Rob. (Va.) 20, supra.

"'A decree can never be final until the party in whose favor it is can obtain some benefit therefrom without again setting the cause .down for further hearing before the court, upon the equity reserved upon the coming in and confirmation of the report of the master, to whom a reference has been made to ascertain facts which are absolutely necessary to be determined before the case can be finally disposed of by the court, or which the chancellor thinks proper to have ascertained before he grants any relief. But if the questions which can arise on the exceptions to the master's report are such as are merely incidental to the carrying of the decree into effect, it is final—citing Johnson v. Everett, 9 Paige, 638; Freeman on Judgments, § 30.' Linn v. Arambould, 55 Tex. 611."

In addition to the above authority cited by the Supreme Court, Chancellor Walworth defines a final judgment to be:

"A decree which finally decides and disposes of the whole merits of the cause, and reserves no further question or directions for the future judgment of the court, so that it will be necessary to bring the cause before the court for its further decision, is a final decree." 3 Words and Phrases, 2774.

Mr. Storey says:

"A decree is final which adjudicates on all the merits of the controversy, and leaves nothing further to be done but the execution of it." 3 Words and Phrases, 2775.

The following is from Words and Phrases, after a complete review of all of the authorities on the question of what constitutes a final judgment:

"A decree is final when all the circumstances and facts material and necessary to a complete explanation of the matters in litigation are brought before the court, and so fully and clearly ascertained by the pleadings on both sides that the court is enabled from them to collect the respective merits of the parties litigant, and upon full consideration of the case made out and relied upon by each determines between them according to equity and good conscience." 3 Words and Phrases, 2774.

Applying the rule announced by the Supreme Court in Leyhe-McNamara Case, supra, and the definitions of a final judgment, it is clear that the order or judgment of May 12, 1920, decreed that appellees should, upon a final hearing of the case, ultimately recover whatever specific properties that might be found from the evidence to belong to the estate of T. H. McCloskey, deceased, after the nature and extent of the properties were ascertained by a further hearing, and the accounts adjusted between the parties, and that appellees would be entitled to a partition and possession of said specific properties, rather than the moneys representing the sales prices of these properties

as contended by appellants. Appellees' suit was for an accounting and partition and for possession after partition. If the court had stopped with the procedure recited in this judgment, appellees would have obtained no benefit from the judgment, since the court had only determined the ultimate right of appellees in the properties, the nature and extent of which was left to a future hearing. The future hearing to ascertain the nature and extent of the properties to which appellees were entitled, and to adjust their account with appellants, was absolutely necessary in order for the court to finally adjudicate the rights between the parties, and grant completely the relief prayed for, i. e., accounting and partition with possession. To ascertain and adjust the account, and to ascertain the nature and extent of the properties to which appellees were entitled, the court put into operation the machinery of the court by appointing a receiver to hold and preserve the properties pending the suit, appointed a master to state the account, and later set the case down for a hearing upon the master's report and the evidence, at which hearing the court entered its final order adjusting the account, declaring the nature and extent of the properties, that appellees were entitled to possession of, and decreed a partition thereof. We submit that the order of May 12, 1920, was merely declarative of the principles governing and incident to the later final judgment, said former order being then necessary to be determined to enable the court thereafter to apply the principles announced to the details of the subject, and grant the complete relief sought by the suit.

[3] Appellants' second contention that the construction of the will was a matter preliminary to and precedent to the appointment of a receiver and a master to state the account, and no assignment or complaint being made on the appeal from the interlocutory order appointing a receiver, the error, if any, was either adjudicated or waived, and cannot now be heard on this appeal from an order of the court adjusting the account between the litigants and decreeing a final partition of the properties amongst them, is without merit. An appeal from an interlocutory order appointing a receiver is one authorized by our statutes, and is only determinative of the rights of the court to appoint a receiver upon the grounds alleged and proved. It is not incumbent upon one appealing from an interlocutory order appointing a receiver to also appeal from all interlocutory orders had in the cause out of which the receivership issued as an ancillary proceeding, made by the court prior to the time of such appeal on the receivership. The matter of construing the will was not relied upon as a ground for error in appointing the receiver, and the adjudication of the receivership appeal on other grounds did not preclude

appellants from asserting the alleged error in the construction of the will on this appeal.

[4-7] We sustain appellees' contention that the right of the court to appoint a receiver to·hold and preserve the properties pending the suit was finally and conclusively ·determined against appellants on their appeal from the interlocutory order appointing such receiver. The grounds assigned, except one, are the same as were assigned by appellants on their appeal from the order appointing the receiver, and, in absence of. a motion to vacate the appointment, it cannot be questioned. Appellants' motion to retax the costs in the receivérship case is a collateral attack upon the judgment appointing a receiver, and cannot be considered. The costs incident to the receivership were adjudicated up to and including the costs of appeal against appellants by this court in its judgment affirming the trial court's judgment appointing such receiver, reported in 228 S. W. 323, and the costs of receivership incurred thereafter were not a subject for determination (nor was such determined) by this judgment, but should be determined at the final hearing and discharge of the receiver. Likewise, appellants' proposition that appellees, by amending their pleadings after this court had affirmed the order appointing a receiver, and by omitting to continue to pray for such appointment, but merely reciting the fact of his appointment and the affirmance of the judgment by this court, constituted an abandonment of the receivership, is a collateral attack upon the judgment appointing the receiver, and is not sustained. Aside from the fact that it is a collateral attack on the judgment referred to, it is without merit as a matter of law.

The following authorities cited by appellees sustain their contention on some of the points discussed, the other points are so apparent as to not necessitate the citation of authorities: T. & S. Ry. Co. v. Brown, 91 Tex. 678, 45 S. W. 793; 17 Ency. P. & P. 682(2); Massey v. Blake, 3 Tex. Civ. App. 57, 21 S. W. 782; Sweetzer v. Claflin, 82 Tex. 513, 17 S. W. 769; Boyd v. Beville, 91 Tex. 439, 44 S. W. 287; Waters-Pierce Oil Co. v. State, 47 Tex. Civ. App. 299, 105 S. W. 851; Holland v. ,Preston (Tex. Civ. App.) 41 S. W. 374; Edrington v. Pridham, 65 Tex. 616; New Britain Mach. Co. et al. v. Watt (Tex. Civ. App.) 180 S. W. 624; High on Receivers, par. 39b; Eichman v. Hersker, 170 Pa. 402, 33 Atl. 229; National Bank v. State Bank, 104 Iowa, 682, 74 N. W. 26; Platt v. Railway, 170 N. Y. 451, 63 N. E. 532.

This brings us to a discussion of appellants' first and second propositions, which assert error on the part of the court in ordering a partition of the real estate, because it is contended that the will of T. H. McCloskey, deceased, created and directed an equitable conversion of the real estate and personal property into money for final distribution. to appellees as his residuary legatees and devisees; that the will imposed the imperative duty upon appellants, as executors thereunder, to sell the real estate and the personal property, and to distribute the proceeds thereof to appellees after the payment of certain money legacies and the debts of the testator, and that the court was therefore without power to order a partition of the real estate. The will of T. H. McCloskey, deceased, omitting the formal parts, is as follows:

"1st. I desire that all of my just debts be paid as soon after my death as may be, having due regard to the interest of my estate.

"2nd. I hereby declare that all of the property now owned and possessed by me is the community property of myself and my wife, Laura McCloskey, and I hereby give, devise and bequeath to my said wife, Laura McClos-· key, a life interest in all of my estate, to be hers to use and enjoy, together with tne fruits and revenues arising therefrom during the term of her life. And upon the death of my said wife, my interest in said estate is to be disposed of by my executor in such manner as in his judgment may best result in the greatest benefit to my estate, and when converted into cash, shall by my executor be paid over as follows, to wit: [Here follows the names of the money legatees and their addresses and relation to testator.]

"The residue of my estate to be divided after the death of my wife, and the payment of the foregoing legacies, to my sisters and brothers, then surviving, share and share alike. Provided, that should any of my brothers or sisters die before the death of my wife, leaving surviving them either wife or children, then the share of such deceased brother or sister shall descend to the wife or children surviving them. And should my sister, Maggie Glick, die before the death of my wife, leaving surviving her husband, Andy Glick, then her share in my estate shall descend and vest in her said husband. And should any of my said brothers or sisters die leaving surviving neither wife nor children, except my sister Maggie, then the share.of said brother or sister, deceased, shall be divided equally among the brothers and sisters surviving.

"3rd. I hereby nominate and appoint my friend, Peter McKinley, of Tom Green county, Texas, my sole independent executor under this will, and I hereby specially authorize and empower my said executor to sell, transfer and convey any and all of my estate whenever in his judgment such sale is necessary for the best interest of my estate, or the carrying out of the provision of this will.

"4th. It is my will that no bond or other security shall be demanded or required of my said executor, and no action shall be taken in regard to my estate in any court, except the probating of this my last will, and filing an inventory of my said estate, as required by the laws of Texas. * * *

"[Signed]    T. H. McCloskey."

The codicil to said will is as follows:

"* * * I, T. H. McCloskey, of San Angelo, Texas, but now temporarily in Los An-

geles county, state of California, being of sound mind and memory, and being aware of the declining health of my friend, Peter McKinley, who I have appointed independent executor under a will executed by me on the 16th day of October, A. D. 1910, do hereby make and publish this codicil to my said will above mentioned; I hereby nominate, constitute and appoint my two friends, James J. Neill and Geo. Richardson, independent executors of my said will, executed by me on the 16th day of October, A. D. 1910, in lieu and instead of said Peter McKinley named in said will, and I will, desire and instruct that all of the provisions of said will dated October 16, A. D. 1910, in anywise applicable to the executor therein named, shall apply to the executors herein named with equal force and effect as if the executor herein named appeared in said original will in the place where the name of Peter McKinley now appears. It is not my intention in making this codicil to change in any particular my said will dated October 16, 1910, except the changing of the executors of said will, and I hereby ratify and reaffirm all of the provisions of my said will executed on October 16, 1910, in each and every particular, save and except the change of executors herein provided for. Should either of my executors herein named die before the death of my said wife or the final division of my estate, then the remaining executor shall be authorized to act alone as though originally appointed sole independent executor. I am writing this codicil wholly with my own hand, executed by me at Monrovia, California, Los Angeles county, this 9th day of December, A. D. 1914.

        "[Signed]    T. H. McCloskey."

[8] We do not find any Texas authority construing a will to ascertain if an equitable conversion was provided. The Texas statutes do not prohibit an equitable conversion by a testator. The general doctrine of equitable conversion has been adopted and is well settled in Texas. Magnolia Park Co. v. Tinsley; 96 Tex. 364, 73 S. W. 5; Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742.

[9-11] In interpreting a will to ascertain whether an equitable conversion has been provided, the primary rules governing the interpretation of wills for any other intent of the testator should be applied; that is, the court should first ascertain and discover the intention of the testator as expressed in the will; second, that intention must be reached by construing the will in its entirety; and, third, special words or clauses, independent of others, evidencing a special intent, if inconsistent with the general intent, the latter must prevail. Simkins on Administration of Estates in Texas, pp. 704, 705; Jarman on Wills, vol. 2, p. 721; McMurray v. Stanley, 69 Tex. 230, 6 S. W. 412; Haring v. Shelton (Tex. Civ. App.) 114 S. W. 389. The authorities uniformly define the term "equitable conversion" to be that change in the nature of the property by which, for certain purposes, real estate is considered as personal, and personal estate

as real, and transmissible and descendible as such; the doctrine being founded on the maxim that equity regards and treats that as done which in fairness and good conscience ought to be done. 2 Words and Phrases, Second Series, 304, 305, and cases cited there. 2 Words and Phrases, pp. 2437 and 2439, and cases there cited; Geiger v. Bitzer, 80 Ohio St. 65, 88 N. E. 134, 22 L. R. A. (N. S.) 285, 17 Ann. Cas. 151, 640; Beaver v. Ross, 140 Iowa, 154, 118 N. W. 287, 20 L. R. A. (N. S.) 65, 17 Ann. Cas. 640.

[12] The text-writers and courts have employed four rules of construction to determine if an equitable conversion has been directed by a testator in his will. They are as follows: First. Conversion is always a matter of intention of the testator, to be determined from the will itself. Second. In order to work a conversion, there must be a positive direction to sell. Third. Or there must appear an absolute necessity to sell, in order to execute the will. Fourth. Or there must be such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both the real and personal property, and bequeath the said fund as money.

Of course, in each of the two latter instances, the intent to convert must necessarily be implied from the terms, provisions, and language used by the testator in his will. 1 L. R. A. (N. S.) 400; Yerkes v. Yerkes, 200 Pa. 419, 50 Atl. 186; Bennett v. Gallaher, 115 Tenn. 568, 92 S. W. 66; Bedford v. Bedford, 110 Tenn. 204, 75 S. W. 1017; Griggs Land Co. v. Smith, 46 Wash. 185, 89 Pac. 477; In re Cooper's Estate, 206 Pa. 628, 56 Atl. 67, 98 Am. St. Rep. 799; Duckworth v. Jordan, 138 N. C. 520, 51 S. E. 109; Boyce v. Kelso Home, 107 Md. 190, 68 Atl. 550; Haward v. Peavey, 128 Ill. 430, 21 N. E. 503, 15 Am. St. Rep. 120; Clift v. Moses, 116 N. Y. 144, 22 N. E. 393; Scholle v. Scholle, 113 N. Y. 271; [1] Reynolds' Ex'r v. Reynolds, 187 Ky. 324, 218 S. W. 1001; Storey on Eq. Jur. (11th Ed.) 789, 790–1212; Jarman on Wills, 549; 3 Pom. Eq. Jur., § 1159 et seq.; 9 Cyc. 831.

In the case of Bennett v. Gallaher, supra, the Supreme Court of Tennessee held, in substance, as interpreted by the writer of Words and Phrases, in volume 2, Second Series, 304, which we find to be a correct analysis of that case, as follows:

"To operate as a 'conversion,' direction that the form of the property be changed must be imperative, in the sense of being positive and unmistakable. If the intention, as gathered from the whole instrument, be left in doubt, or the direction allows the trustee to sell or not as he deems best, the court is not at liberty to say that conversion has taken place, but must deal with the property according to its actual form and character. * * * But the intention to make the conversion must be clear and certain and the direction to sell for that purpose imperative and unconditional.

     [1] 21 N. E. 84.

The intention must appear by expressed direction and the conversion be obligatory upon the executor or trustee. If the direction to sell is made to depend upon contingencies, or discretion is given to the executors to sell for distribution or divide the property in kind, the intent of the testator to make conversion is not sufficiently evident and positive, and none is effected. Where testator gave his real and personal property to his widow for life for the joint use for herself and children, and authorized her to dispose of the personalty at discretion, and on arrival of any child at age to give the child any property she might desire, preserving equality among the children, and empowered her to sell any real estate as she might think best, and providing that at her death any remaining property should be sold and equally divided among the children, there was no 'equitable conversion' of real estate into personalty."

It was held by the Supreme Court of Pennsylvania, in Re Cooper's Estate, supra, that:

"In order to work a conversion of a testator's land into money from the time of his death, there must be either '(1) a positive direction to sell; or (2) an absolute necessity to sell in order to execute the will; or (3) such a blending of real and personal estate by the testator in his will, as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath [it] as money.' "

In the case of Duckworth v. Jordan, 138 N. C. 520, 51 S. E. 109, the court announced substantially the following proposition:

"Where testator devised his real estate to his wife for life, with remainder to a nephew, who predeceased testator, so that there was a lapse of the devise to the nephew into the residuary clause of the will, providing that after the death of testator's wife all the rest of his estate should be sold, and the proceeds equally divided and paid over to the children of testator's brother, there was an equitable conversion of the real estate into personalty for the purpose of devolution."

This authority proceeded upon the theory that by implication, in order to carry out the terms of the will, an equitable conversion was provided.

Mr. Pomeroy, in volume 3 (3d Ed.) § 1159, lays down the following rule:

"No express declaration in the instrument is needed that land shall be treated as money although not sold, or that money shall be deemed land although not actually laid out in the purchase of land. The only essential requisite is an absolute expression of an intention that the land shall be sold and turned into money, or that the money shall be expended in the purchase of land. If this intention is sufficiently expressed, the circumstance that the land has not yet been sold and turned into money, or that the money has not yet been laid out in land, is the very condition of fact in which the doctrine of conversion comes into play, to which the maxim, equity regards that as done which ought to be done, applies. The true test in all such cases is a simple one: Has the will or deed creating the trust absolutely directed, or has the contract stipulated, that the real estate be turned into personal or the personal estate be turned into real?"

The next succeeding section (1160) by this same authority, announces the rule that, if the act itself of selling the land is left to the option or discretion or choice of the executor, then no equitable conversion will take place, because no duty to make the change rests upon him. The rule is firmly settled by the text-writers and the adjudicated cases that, in order to work a conversion while the property is yet actually unchanged, there must be a clear and imperative direction in the will to convert the property. 3 Pomeroy's Equity Jurisprudence, par. 1160; 9 Cyc. 831; Reynolds' Ex'r v. Reynolds, 187 Ky. 324, 218 S. W. 1001; Wheless v. Wheless, 92 Tenn. 293, 21 S. W. 595; Scholle v. Scholle, 113 N. Y. 271, 21 N. E. 84.

In 9 Cyc. p. 830, § A, the writer says:

"It is a well-settled rule in chancery, in the construction of wills as well as of other instruments, that when land is directed to be sold and turned into money, court of equity in dealing with the subject will consider it as personalty. As in the construction of wills the intention of the testator is the main guide. In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it. There must be an expression in some form of an absolute intention that the land shall be sold and turned into money."

This same authority also announces the following rule:

"Where, however, only a power of sale is given, without explicit and imperative direction for its exercise, and the intention of the testator in the disposition of his estate can be carried out, although no conversion is adjudged, the land will pass as such and not be changed into personalty." 9 Cyc. 834.

Jarman on Wills, at pages 549 and 552, lays down the rule that the actual sale or purchase must be directed expressly or impliedly, by the will in order to make a conversion.

[13] An analysis of the will in question shows the following directions of the testator: In the first paragraph, he directs that his debts be paid; in the second paragraph, subdivision 1, he declares that all of the property then owned and possessed by him was the community property of himself and wife, Laura McCloskey, and he bequeathed to her a life interest in his property, to be used and enjoyed by her, together with the fruits and revenues therefrom, during her lifetime; that upon the death of his wife, his interest in the estate was "to be disposed of by my executor in such manner as in his judgment may best result in the greatest benefit to my estate, and when converted into cash, shall be by my executor paid over as follows, to

wit: [here follows certain named money legatees and the amount of each legacy|."

In the second paragraph, under the second subdivision, he directed "the residue of my estate to be divided after the death of my wife and the payment of the foregoing legacies, to my brothers and sisters then surviving, share and share alike." This same subdivision provides that, in case of death of his brothers and sisters, their children surviving them shall be entitled to the portion of the deceased parent, and other provisions not necessary to a decision of this case.

In the third paragraph, after naming an independent executor, the testator directed, "and I hereby specially authorize and empower my said executor to sell, transfer and convey any and all of my estate whenever in his judgment such sale is necessary for the best interest of my estate, or the carrying out of the provisions of this will." The codicil to the will specifically provides that no change is desired in the terms of the will, except to appoint an executor instead of the one named in the will. It is clear to our minds, viewing the whole context of the will, that it was not the intention of the testator to direct an equitable conversion of his estate. If the use of the words in the second paragraph, "and when converted into cash shall by my executor be paid over as follows" (to the named legatees) could be interpreted as giving authority to sell, it is only by implication that it does so. A power to sell by implication will not authorize conversion unless there exists an absolute necessity to sell in order to execute the will. The court found that all of the estate was susceptible of a fair and equitable partition in kind, hence no necessity existed for its sale to distribute and divide among the appellees the proceeds of sale to carry out the terms of the will. If any necessity existed in this case to sell, it would have been only to the extent of raising the money with which to discharge the money legacies, for as to appellees the residue, which under our law involves both real and personal property, passed to them under the will. This was not necessary, because the money on hand and that collected upon notes during the life estate was more than sufficient to pay the money legacies. We think the above last mentioned words mean nothing more than that when enough of his estate, whether real or personal, was converted into cash sufficient to pay the money legacies (named immediately following the use of the words) that the same should be paid as directed. If the use of the above words referred to by the testator was a mandatory and absolute direction to sell all of the property belonging to the estate, the testator did not so consider it, but, to the contrary, he thereafter, in paragraph 3 of said will, specifically "authorized and empowered my executor to sell, transfer and convey any and all of my estate, whenever, in his judgment, such sale is necessary for the best interest of my estate, or the carrying out of the provisions of this will."

This latter clause authorized and empowered the executor to sell, but made that power dependent upon the discretion and judgment of the executor when he thought the sale to be necessary for the best interest of the estate, and to carry out the provisions of the will. This clause clearly only confers a discretionary authority to sell coupled with the power. If it be conceded that the term "when converted into cash," as used in the second paragraph, should be a direct command to sell all the properties as contended by appellants (which it does not do, for the term is immediately preceded by the discretionary power vested in the executor to dispose "of * * * my estate in such manner as in his judgment may best result in the greatest benefit to my estate, and when converted into cash," etc., therefore only conferring discretionary power), yet such specific intent as might be interpreted from this single clause must give way to the general intent of the testator, as evidenced by the whole instrument. The use of the word "residue," which under our laws includes mixed, personal, or real estate, as relating to what appellees should take under the will, excludes the idea that they were only to receive money. The latter provision of paragraph three, conferring discretionary authority to sell, coupled with the power, contradicts the idea that the testator had theretofore directed a mandatory conversion. So, in view of the whole context of the will, we must conclude that, in accordance with the rules of interpretation as govern this case, it was not the intention of the testator to direct a conversion; that the power of sale was discretionary in the executors, and no duty devolved upon them to convert; that no absolute necessity existed requiring a sale of the properties to carry out the provisions of the will; and that there was no such blending of personal and real properties as to evidence the intention of the testator to bequeath the blended fund. Appellants must have recognized this, for they attempted to prove and assign error on the part of the court for refusing to permit them to prove by one of the executors that a few days before the death of the testator, he told the executor that he wished the will carried out, as made, and that he intended for him to sell all the property and distribute the proceeds.

[14, 15] We are also of the opinion that appellants, as independent executors of the estate of T. H. McCloskey, deceased, having so conducted themselves in the execution of the trust imposed in them by the provisions of the will as to necessitate a court of equity, through a receiver, to take from their possession and control the trust estate (which mat-

ter was finally adjudicated against them by this court, reported in 228 S. W. 323, on their appeal from the order appointing the receiver), were, therefore, precluded from asserting the right to exercise any power conferred upon them by the will, and a court of equity, having properly obtained jurisdiction over all the parties interested and of the estate, was authorized to dispose of the estate as in fairness and good conscience the facts and circumstances demanded. We think this rule is correct, notwithstanding the provisions of articles 3358 and 3374 of the Revised Statutes. Appellants filed an answer in this case by which they requested and obtained an order of the court construing the will upon the very questions now complained of, and by such act they will not now be heard to assert that the court was without authority to construe the will, and by such act they waived the procedure provided by the articles of the Revised Statutes above referred to, relative to manner of having adjudicated and declared inoperative any provision of a will. Where a party to a suit pending in a court of competent jurisdiction requests a ruling of said court upon a question involved, over which question another court of competent jurisdiction is also given authority to determine by statute, the party so requesting the ruling is thereafter precluded from asserting that the question determined should have been passed upon solely by the court given the statutory authority to hear and determine the issue.

We therefore conclude that after the death of Laura McCloskey, and after the payment of the money legacies provided in the will, the inheritance taxes and debts against the estate of T. H. McCloskey, the fee-simple title having theretofore vested in appellees to the residuum of his estate, they were entitled to recover their interest and have partition and possession thereof, and the trial court did not err in so ordering the partition.

[16] We do not sustain the other construction placed upon the will by appellants, that by the use of the term, "I desire that all my just debts be paid," etc., the testator intended to bind his one-half interest in the estate to pay the entire community debts of himself and wife owing at the time. Such construction is not based upon either reason or justice. The clause is the ordinary one used in all wills, and means nothing more than that the testator wished his debts, whether one-half of the community debts or individual debts, which the law charges against his estate to be paid. The law charges a testator's debts against his estate whether or not he makes provision for their payment in his will.

[17, 18] Appellants' third proposition complains of the action of the trial court in excluding the testimony of James J. Neill, one of the executors of the estate of T. H. McCloskey, deceased, to the effect that the said

T. H. McCloskey, a short time previous to his death, told said witness that he wanted the property sold and the proceeds divided and to pay each one the identical penny coming to them; that he did not want them fussing about it; and that they would do so if they had an undivided interest. We are of the opinion that the court correctly excluded the testimony. Of course, the primary purpose of the introduction of the testimony was to show that it was the intention of the testator to direct an equitable conversion of his property, which cannot take place according to the adjudicated cases, except when it is clear from the language of the will that such was the intention of the testator. The intention of a testator cannot be shown by parol evidence but must be determined from the language of the will. Hagood v. Hagood (Tex. Civ. App.) 186 S. W. 220. This testimony comes clearly within the inhibition of the evidence rule which provides that the terms of a written instrument cannot be varied by parol testimony. It also comes clearly within the inhibition of the rule that the intention of the testator must be determined from the language of the will, and not by oral testimony of such intention. Neither do we think the testimony referred to admissible upon the question of the good faith of the executors as contended by appellants. Good faith was certainly an issue, but it was immaterial to the issue then before the court as to whether the will of the deceased, T. H. McCloskey, provided an equitable conversion. Appellees can in no way be bound by an interpretation or construction of the will in question by appellants. Appellants had the right to apply to a court of competent jurisdiction for instructions as to their duties under the will, and such instructions, if followed in good faith, would have been binding on appellees. The courts are the only agencies of the government which may construe the terms of a will so as to bind all parties thereto. Perry on Trusts, § 476a; In re Bullion, 87 Neb. 700, 128 N. W. 32; Thornton v. Zea (Tex. Civ. App.) 39 S. W. 595.

[19, 20] Appellants' fourth and fifth propositions assert error because the court charged an item of $2,532, representing a tombstone and a curbing placed at the grave of the deceased, T. H. McCloskey, by his wife which the master and court charged to the life estate interest of Laura McCloskey in the community estate. Appellants contend that under the master's finding this was a reasonable expense, in view of the deceased's position and standing in life; this item, as a matter of law should be charged either against the community estate, or against the one-half interest of T. H. McCloskey, deceased. An issue of fact was joined by the pleadings and the evidence of whether such expenses were contracted for by Laura McCloskey, intending to be paid by her out of

her own estate. The issue of fact was submitted to the master, who found that she did contract for these expenses, intending to bind her estate therefor; and the court upon the master's findings and report entered judgment charging the life estate of Laura McCloskey with such expenses. The testimony supports such findings and judgment, and they will not be disturbed on appeal. Goldberg v. Zellner (Tex. Com. App.) 235 S. W. 870.

[21] Appellants' propositions 8, 9, and 10 complain of the action of the trial court in refusing to charge against the corpus of the interest of T. H. McCloskey in the community estate the premiums on insurance policies taken out by themselves as executors during the life tenure of Laura McCloskey in the estate. We do not think this complaint well taken under the facts of this case. The testimony taken on this subject before the master. although reduced to writing and filed with his report by order of the trial court, and although the trial court considered this testimony in arriving at its judgment, appellants did not see fit to have same placed in the transcript or statement of facts on this appeal; hence we can only consider such evidence as is before us on this question. Appellants never permitted Laura McCloskey to take possession of or have anything to do with the management of the community estate of herself and deceased husband, during her life tenure therein as provided by the will. They attended to the detailed matter of paying her living expenses. She seems to have consented and acquiesced in every way to their management and control. The will did not provide for the joint control and management of the entire community during the life estate; nor does the record show any necessity therefor. The insurance policies cover plate glass and fire, etc., and were taken out in the name of the executors. Neither Laura McCloskey, as life tenant, nor appellees, as remaindermen, ever requested them to insure the property; nor did any of them know about it so far as the record is concerned. The premiums during the life estate period amounted to the sum of $1,105.54. The policies are not before us; nor is there any proof that they covered more than the probable insurable interest of the life tenant in the property, or that they covered only the insurable interest of the remaindermen in the property, except the fact that they were taken out in the name of the executors. The executors represented both the life tenant and the remaindermen. Their acts, therefore, must be charged to the party at interest upon whom the duty to insure devolved. We find no authority in Texas directly adjudicating this point; however, the decisions of this state are well settled that taxes and repairs made during a life estate are not chargeable to the corpus of the estate, but to the life estate income. This estate consisted of real and personal property which produced a large income. In the very nature of things, where a life estate can continue for many years, to permit the insurance premiums to be charged against the corpus of the estate would greatly reduce the estate of the remaindermen, and in some instances entirely defeat it. The general rule announced in other states is that insurance during the life estate is not chargeable to the corpus of the estate, but to the income of the estate during the life term. 17 R. C. L. pp. 535–642. We therefore conclude that under the facts and circumstances of this case the court correctly charged the insurance premiums to the income of the property during the life estate. Especially do we think this decision correct in view of the decision of this court in the case of Grant v. Buchanan, 36 Tex. Civ. App. 334, 81 S. W. 820, holding that remaindermen were only entitled to the excess of 'an insurance policy over and above the value of the life estate. This case also announced the rule that, where the remaindermen intervene and claim the excess, they must prove the amount of the excess; otherwise judgment for the entire amount will be given the life tenant.

[22, 23] Closely akin to these propositions relative to the payment of insurance premiums are appellants' propositions 22 and 23, by which they allege that the court erred in refusing to permit them as executors to charge one-half of the permanent repairs and improvements made on the property during the term of the life estate, and to charge one-half of the taxes on the property during the life estate to the community share or interest of T. H. McCloskey, and especially the taxes on what was termed nonrevenue bearing real estate. These propositions are without merit. We are of the opinion that the estate in remainder is not liable for taxes accruing during the life estate, whether on productive or nonproductive properties. A life tenant is entitled to rents, revenues, and benefits of the estate, and is charged with the improvements, repairs, and taxes during the term. It is well established in Texas that the estate in remainder is not chargeable with permanent improvements placed on the property by the life tenant. Perry on Trusts, vol. 2, § 552; 17 R. C. L. 535; 16 Cyc. 629; Elam v. Parkhill, 60 Tex. 581; Clift v. Clift, 72 Tex. 144, 10 S. W. 338; Heidelberg v. Behrens (Tex. Civ. App.) 85 S. W. 1029; 23 R. C. L. 568.

[24] Likewise, closely akin to the above discussed propositions are propositions 50, 51, and 52 of appellants that the interest of T. H. McCloskey in the estate should be charged with one-half the expenses of management of the estate during the term of the life tenant, such as bookkeeping expenses, etc. They also complain that the court refused them bookkeeping expenses after May 1, 1918, which is the date the court found that they

should have turned over to appellees their interest in the properties. These propositions are without merit. The will did not provide that the executors remain in possession during the life estate. The necessity of their doing so was an issue in the case, which the court, by refusing to allow the expense incurred, inferentially found against appellants on the issue. The judgment is sufficiently supported by the evidence. The rule is correctly announced in 17 R. C. L. § 16, p. 626, that:

"In the absence of a provision to the contrary in the instrument by which the estate is created, the life tenant is entitled to the possession and use of real estate, and it has been held that a devise of real estate for life, with remainder over is always to be treated as a specific devise, of which the tenant for life is to have the possession, use, and incomes during life."

[25] It is also well settled that the expenses of the care and management of a life estate must be paid by the life tenant, and not by the remainderman. Todd's Executors v. First Nat. Bank, 173 Ky. 60, 190 S. W. 468; Reiff's Estate, 124 Pa. 145, 16 Atl. 636; Beermann v. DeGive, 112 Ga. 614, 37 S. E. 883. The latter case correctly announced the rule to be as follows:

"When an undivided interest in an entire estate, which consists of both realty and personalty, is devised to one for life, with remainder over to others, and the whole estate is necessarily and properly kept together for a period of years, the necessary expenses of keeping the realty in repair and the legitimate expenses of administration are, as between the life tenant, and the remaindermen, properly payable out of the estate's income."

[26, 27] Appellants' propositions 11 to 17, both inclusive, complain that the court did not allow them the commissions on receipts and disbursements to which they were entitled as executors. We do not sustain these complaints. The pleadings of appellants merely alleged that they had never taken out any commissions and that they were entitled to 5 per cent. on moneys received and paid out. No request was made to submit the question of commissions to the master. A general objection was addressed to his report, because commissions were not included. No amount or item upon which commissions were claimed was ever submitted to the court or the master. Under such circumstances, if appellants were entitled as a matter of law to any commissions, they would not be entitled to charge commissions on disbursements and collections for which they had already paid agents the 5 per cent., and the court had nothing before it on which to base a judgment, and it was therefore not error for it to refuse to render judgment for commissions. 16 Cyc. 40; Ballard v. McMillan, 5 Tex. Civ. App. 679,

25 S. W. 329; Whitehead v. Perie, 15 Tex. 7; Young v. Rose, 80 Ark. 513, 98 S. W. 370.

[28] Aside from the question of insufficient proof or pleading entitling appellants to the usual commissions allowed by law to executors, the judgment rendered and the facts of this case preclude appellants in a recovery of commissions under both the statutes governing such matters and the adjudicated cases.

Appellants having as executors and individually unlawfully appropriated and used the funds of the estate and refused to account for them, they are not entitled to commissions allowed by law to executors for the administration of an estate. Schouler on Executors and Administrators, p. 640; Thomas v. Hawpe, 35 Tex. Civ. App. 311, 80 S. W. 131; articles 3621, 3628, 3629, R. S. Commissions are not allowed as an offset to a judgment against an administrator for money not accounted for. Chapman v. Brite, 4 Tex. Civ. App. 506, 23 S. W. 514; Brown v. Walker's Heirs, 38 Tex. 109.

[29] Without following appellants' various propositions 18 to 24, attacking the judgment rendered by the court for appellees in the sum of $14,048.01, for reasons that the items making up the judgment were not properly chargeable to the executors, who are asserted to have paid out the moneys on proper vouchers, and that if the just debts and charges against the estate of T. H. McCloskey had been made a very small amount would be owing to the said estate, and that the moneys charged by the master in his report as being appropriated, were appropriated by Neill after the death of Laura McCloskey, and that the executors were not liable as executors or individually for such appropriation, we will undertake to answer all these contentions with one statement. The court had before it, in passing upon these various matters, the evidence adduced before the master on his hearing, the findings and report of the master, and the evidence introduced before the court on the hearing of the case upon its merits, and rendered the judgment complained of thereon, which we find to be sufficiently supported by the evidence, and will therefore not be disturbed on this appeal.

[30] Appellants' propositions 25 to 35 complain of the trial court's judgment for $1,960.14, as interest on the value of the properties appropriated by appellants from and after May 1, 1918, to date of judgment. Appellees prayed for interest. The court found that on and before May 1, 1918, appellees demanded of appellants an accounting, and a partition and delivery to them of the residuum of the T. H. McCloskey estate, at which time appellants denied and refused appellees an accounting and partition and delivery of said estate, and at which time

appellants had appropriated to their own use the sum of $12,087.87. The interest is correctly calculated upon this amount. Where an executor upon demand refuses to account and deliver the trust estate in his hands to the beneficiary at the completion of the term of the trust, and is found to have appropriated to his own use funds belonging to the trust estate, he is liable for interest on the amount found to be due from the date of the demand by the beneficiaries. Thomas v. Hawpe, 35 Tex. Civ. App. 311, 80 S. W. 129, and cases there cited.

[31, 32] Numerous propositions are presented by appellants attacking that portion of the judgment of March 10, 1922, reading:

"It is further ordered and adjudged by the court that the plaintiffs recover of the defendants all the costs in this behalf incurred, for which they may have their execution."

The "costs incident to the receivership," that is, the costs of management of the properties since the receiver took charge, July 13, 1921, were not attempted to be adjudicated by this judgment. These costs are to be settled by the court on the termination of the receivership. The costs incurred prior to and on appeal from the receivership order were finally determined against appellants when this court affirmed that case. Richardson v. McCloskey (Tex. Civ. App.) 228 S. W. 323.

The judgment awarding appellees a recovery of "all the costs in this behalf incurred," i. e., all costs in this suit accrued at that time, were properly assessed against appellants. The facts show that appellants denied the right of appellees to an accounting and partition of the residuum of the T. H. McCloskey estate; hence this suit to ascertain appellees' right to recover. The court found that appellants had appropriated to their use large amounts of the estate and rendered judgment for appellees therefor, and directed a partition of the properties; and appellants under such state of facts were entitled to pay the costs under the provisions of the statutes and the adjudicated cases. Appellants' sole defense to appellees' suit for an accounting and partition of the residuum of the T. H. McCloskey estate was that the will provided an equitable conversion, and that it was their duty to remain in possession, sell the property, and divide the proceeds. The question, therefore, resolved itself into a suit by the beneficiaries to terminate the trust. The defense of the executors in the suit was in their individual rather than in their fiduciary capacity. The action under the defense of appellants was solely to determine their further right to administer the estate. They asserted as individuals the right to retain possession of the estate as its legal representatives. The judgment was against them, and the costs were properly taxed against them. Revised Statutes 1911, arts. 2035, 3536, 3627; Thomas v. Hawpe, 35 Tex. Civ. App. 311, 80 S. W. 129; Lanius v Fletcher (Tex. Civ. App.) 99 S. W. 169; Nagle v. Von Rosenberg, 55 Tex. Civ. App. 354, 119 S. W. 706; Askey v. Williams, 74 Tex. 294, 11 S. W. 1101, 5 L. R. A. 176; King v. Bock, 80 Tex. 156, 15 S. W. 804; Richmond v. Sims (Tex. Civ. App.) 144 S. W. 1142; Zarate v. Villareal (Tex. Civ. App.) 155 S. W. 328; Perry v. Rogers, 52 Tex. Civ. App. 594, 114 S. W. 897.

The costs of partition were not disposed of by the above judgment, but are still to be determined by the court when the partition is made by the commissioners appointed for that purpose. The rule as to costs in a partition suit has been announced by numerous cases by the Supreme Court to be:

"Where defendants litigate a partition suit it is proper on the plaintiff succeeding that he have judgment for his costs up to the final judgment, the costs of partition to be paid pro rata by those taking in partition." Askey v. Williams, 74 Tex. 294, 11 S. W. 1101, 5 L. R. A. 176; King v. Bock, 80 Tex. 156, 15 S. W. 804; Richmond v. Simms (Tex. Civ. App.) 144 S. W. 1142; Zarate v. Villareal (Tex. Civ. App.) 155 S. W. 328; Perry v. Rogers, 52 Tex. Civ. App. 594, 114 S. W. 897.

Executors who refuse an accounting and are compelled to do so by suit are liable individually for the costs in accounting, such as compensation for auditors, etc. Bradley v. Westchester St. R. R. Co., 160 Pa. 72, 28 Atl. 500; article 3629, R. S.; Lanius v. Fletcher (Tex. Civ. App.) 99 S. W. 169; Perry on Trusts, § 900, p. 544. The court correctly disposed of the costs up to the date of its judgment.

We have carefully examined all the other assignments of error presented by appellant, none of which are sustained by us, and we therefore affirm the judgment rendered by the trial court in favor of appellees and against appellants, and we further adjudge appellees a recovery of all costs in this behalf expended.

[33] We reverse and remand upon appellees' cross-assignments of error the judgment of the trial court allowing appellants attorney's fees for the defense of this suit, with instructions that, if on another hearing the trial court should award attorney's fees to appellants, no part of it be charged against the estate of T. H. McCloskey, deceased, or against appellees.

The appellants sought to recover their attorney's fees in this case under the provisions of article 3623, of the Revised Statutes, which is as follows:

"Executors and administrators shall * * * be allowed all reasonable expenses necessarily incurred by them in the preservation, safekeeping and management of the estate, and all reasonable attorney's fees that may be

necessarily incurred by them in the course of the administration."

In order to authorize an allowance of attorney's fees to executors under this statute, it must appear that the expenses were necessarily incurred in the course of the administration of the estate.

Appellants' proof showed that the only service rendered them by the attorneys was to advise them after the death of Laura McCloskey, and particularly after this suit was filed, that the will in question provided an equitable conversion; to answer in this suit; to ask for construction of the will; to defend against the appointment of a receiver to take the property out of the executors' hands; and to aid them in preparing, presenting and having adjudicated their account.

The trial court found appellants had mismanaged the trust estate and appointed a receiver to take charge of it; that they had appropriated a large amount of the estate to their own use; that they failed to keep correct books and accounts, and appointed a master to unravel and state the account, and rendered its judgment accordingly. Under such state of facts appellants would not be entitled to select the attorneys to defend them in these acts and charge their fees against the trust estate.

Appellants, Richardson and Neill, as co-executors of the estate of T. H. McCloskey, deceased, and individually, and Neill as executor and practically the sole legatee and devisee of the estate of Laura McCloskey, deceased, made a joint defense in this suit. Neill, under the will of Laura McCloskey, became owner of her estate, and adversely interested to the estate of T. H. McCloskey, of which he was also executor, to the extent that when any expenses or debts of administration were charged against the T. H. McCloskey estate it would directly result in adding to and enhancing the value of the Laura McCloskey estate, of which he was the sole owner under the will. Appellant Richardson aided him in this fight by joining with him in a general defense, both in his capacity as executor and individually. The one fact alone that the attorneys represented the executors and also represented them individually should not prevent them from recovering reasonable attorney's fees; but the fact that the claims made by the executors against the trust estate were contested and were in the interest of another estate than the one represented, or were in the interest of one of the executors individually, who had become adversely interested to the estate so represented by them, would deny them the right to select the attorneys to represent the estate and charge it with their fees.

The defense that the will provided an equitable conversion and therefore gave appellants the right to remain in possession and execute the trust resolved itself in this suit into a defense by the executors individually asserting the right to remain in charge of the trust estate in their representative capacities, and for which no attorney's fees can be allowed.

We therefore conclude that appellants are not entitled to a recovery of attorney's fees under the facts and circumstances of this case. Jarvis v. Drew (Tex. Civ. App.) 215 S. W. 970; Pendleton v. Hare (Tex. Com. App.) 231 S. W. 334; Thornton v. Zea (Tex. Civ App.) 39 S. W 595; Renn v. Samos, 37 Tex. 240; Gilroy v Richards, 26 Tex. Civ. App. 355, 63 S. W. 664, Bell v. Goss, 33 Tex. Civ. App. 158, 76 S. W. 315; James v. Craighead (Tex. Civ. App.) 69 S. W. 241; Dyess v Rowe (Tex. Civ. App.) 177 S. W. 523: Rowe v. Dyess (Tex. Com. App.) 213 S. W. 234; Nagle v. Von Rosenberg, 55 Tex. Civ. App. 354, 119 S. W. 706; Sterrett's Appeal, 2 Pen. & W. (Pa.) 426; Mims' Adm'r v. Mims, 39 Ala. 716; Lanius v. Fletcher (Tex. Civ. App.) 99 S. W. 169.

Judgment rendered by the trial court for appellees against appellants is, in all things, affirmed. Judgment of the trial court for appellants for attorney's fees is reversed and remanded, with instructions.

Affirmed as to appellees. Reversed and remanded, with instructions, as to appellants for attorney's fees.